# IN THE UNITED STATES DISTRICT COURT FOR MARYLAND

## GREENBELT DIVISION

|  |  |
|---|---|
| MS. PATRICIA FLETCHER<br>1531 Belle Haven Drive<br>Landover, MD 20785<br>Prince George's County, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| MR. TREVELYN OTTS<br>157 Fleet Street<br>Oxon Hill, MD 20745<br>Prince George's County | )<br>)<br>)<br>)<br>) |
| | )   Civ. Action No.: _____ |
| MR. DONALD M. GLOVER<br>1142 N. Carrollton Avenue<br>Baltimore, MD 21217<br>Baltimore City, | )<br>)<br>)<br>)<br>) |
| MS. JANIS HAGEY<br>14005 Gullivers Trail<br>Bowie, MD 20720<br>Prince George's County, | )<br>)<br>)<br>)<br>) |
| MS. WINNIE MAE CAMPBELL<br>3508 Ellen Road<br>Baltimore, MD 21244<br>Baltimore County, | )<br>)<br>)<br>)<br>) |
| MR. MICHAEL HARRIS<br>3709 Southgate Court<br>Temple Hills, MD 20748<br>Prince George's County, | )<br>)<br>)<br>)<br>) |
| MR. MICHAEL THOMPSON<br>2715 University Boulevard<br>Wheaton, MD 20902<br>Montgomery County, | )<br>)<br>)<br>)<br>) |
| MS. JULIA L. WILLIAMS<br>13910 Amberfield Terrace<br>Upper Marlboro, MD 20772<br>Prince George's County, | )<br>)<br>)<br>) |

1

MS. ROBINA SPRUILL                )
11502 Hornbeam Court              )
Waldorf, MD 20601                 )
Charles County,                   )
                                  )
            Plaintiffs,           )
                                  )
v.                                )
                                  )
LINDA H. LAMONE in her official   )
capacity as State Administrator of )
Elections for the state of Maryland )
And Robert L. WALKER in his       )
official capacity as Chairman of  )
the State Board of Elections,     )
                                  )
            Defendants.           )
_____)

## COMPLAINT

## I.        INTRODUCTION

1. Plaintiffs are individual registered voters that seek declaratory and injunctive relief to enforce Article One Section Two of the United States Constitution, the Fourteenth and Fifteenth Amendments to the United States Constitution and the Voting Rights Act of 1965, as amended.

2. Plaintiffs seek a declaratory judgment that the newly enacted Maryland congressional redistricting plan ("Enacted Maryland Congressional Plan") violates their civil rights because the plan intentionally discriminates against racial minorities in violation of the Fourteenth and Fifteenth Amendments; unlawfully dilutes the voting strength of African Americans in violation of the Voting Rights Act of 1965; malapportions districts by violating Article One Section Two of the U.S. Constitution and the Fourteenth Amendment; and by constituting a political gerrymander in violation of the Fourteenth Amendment.

3. Plaintiffs seek a permanent injunction prohibiting the calling, holding, supervising or certifying of any future congressional elections under the challenged redistricting plans. Plaintiffs seek the creation of congressional redistricting plans that will not cancel out, minimize or dilute the voting strength of African American voters in Maryland.

4. Plaintiffs further seek costs and attorneys' fees.

## II. JURISDICTION

5. Jurisdiction is based upon 28 U.S.C. §§ 1343a (3) & (4) and upon 28 U.S.C. § 1331 for causes of action arising from 42 U.S.C. §§ 1973 and 1973c. Additionally, a three-judge court has jurisdiction in accordance with 28 U.S.C. § 2284 because this claim relates to constitutional claims involving statewide redistricting.  Jurisdiction for Plaintiffs' claim for declaratory relief is based upon 28 U.S.C. §§ 2201 and 2202.   Jurisdiction for Plaintiffs' claims under Article One Section Two, the Fourteenth and Fifteenth Amendments to the U.S. Constitution is based upon 42 U.S.C. §§ 1983 and 28 U.S.C. § 1331. Jurisdiction for Plaintiffs' claim for attorney's fees is based on 42 U.S.C. §§ 1973L(e) and 1988. Venue is proper in this court under 28 U.S.C. § 1391(b).

## III. PLAINTIFFS

6. Plaintiff Ms. Patricia Fletcher is African American and a registered voter of Maryland. She resides in Landover, Maryland.  In the Enacted Maryland Congressional Plan she resides in the Fourth Congressional District.

7. Plaintiff Mr. Trevelyn Otts is African American and a registered voter of Maryland. He resides in Oxon Hill, Maryland.  In the Enacted Maryland Congressional Plan he resides in the Fourth Congressional District.

8. Plaintiff Mr. Donald M. Glover is African American and a registered voter of Maryland. He resides in Baltimore, Maryland.  In the Enacted Maryland Congressional Plan he resides in the Seventh Congressional District.

9. Plaintiff Ms. Janis Hagey is African American and a registered voter of Maryland. She resides in Bowie, Maryland. In the Enacted Maryland Congressional Plan, she resides in the Fifth Congressional District.

10. Plaintiff Ms. Winnie Mae Campbell is African American and a registered voter of Maryland.  She resides in Baltimore County, Maryland.  In the Enacted Maryland Congressional Plan she resides in the Second Congressional District.

11. Plaintiff Mr. Michael Harris is African American and a registered voter of Maryland. He resides in Temple Hills, Maryland. In the Enacted Maryland Congressional Plan, he resides in the Fourth Congressional District.

12. Plaintiff Mr. Michael Thompson is African American and a registered voter of Maryland. He resides in Wheaton, Maryland. In the Enacted Maryland Congressional Plan, he resides in the Eighth Congressional District.

13. Plaintiff Ms. Julia L. Williams is African American and a registered voter of Maryland. She resides in Upper Marlboro, Maryland. In the Enacted Maryland Congressional Plan, she resides in the Fourth Congressional District.

14. Plaintiff Ms. Robina Spruill is African American and a registered voter of Maryland. She resides in Waldorf, Maryland. In the Enacted Maryland Congressional Plan, she resides in the Fifth Congressional District.

15. All Plaintiffs are injured by the malapportionment of the Congressional Districts.

16. All Plaintiffs are injured as a result of the intentional discrimination contained in the Enacted Maryland Congressional Plan.

17. All Plaintiffs are injured as a result of the violations of Article 1, Section 2 of the United States Constitution for apportionment of Congressional Districts.

18. All Plaintiffs are injured as a result of the political gerrymander inherent in the Enacted Maryland Congressional Plan.

## IV. DEFENDANTS

19. Defendant Linda Lamone is sued in her official capacity as Election Administrator for the State of Maryland. Defendant Lamone is the State's elections officer and as such is responsible for overseeing the conduct of elections within the State.

20. Defendant Robert L. Walker is sued in his official capacity as Chairman of the Maryland State Board of Elections.

## V.  FACTS

21. According to the 2010 Census, the population of Maryland is 5,773,552 with an African American population of 1,783,899 (30.9%). The African American voting age population of Maryland is 29.3% of the total voting age population.

22. According to the U.S. Census Bureau, African American population of Maryland grew 17.0% between 2000 (1,525,036) and 2010 (1,783,899).

23. According to the U.S. Census Bureau, the non-Hispanic white population of Maryland declined 3.91% between 2000 (3,286,547) and 2010 (3,157,958).

24. The Enacted Maryland Congressional Plan was signed into law by Governor Martin O'Malley on October 20, 2011.

25. The Maryland congressional redistricting process began when Governor O'Malley appointed a commission called the Governor's Redistricting Advisory Committee ("GRAC") to hold public hearings, review plans submitted by public officials and members of the public, and propose a recommended redistricting plan for the state's eight congressional districts for the Governor's review.

26. GRAC was comprised of five members appointed by Governor O'Malley.  They are Maryland Secretary of Appointments Jeanne D. Hitchcock (Chair of GRAC), Maryland Senate President Thomas V. Mike Miller, Jr., Maryland Speaker of the House Michael E. Busch, Maryland Representative James King, and President and Chief Executive Officer of Montgomery Mechanical Services Incorporated Richard Stewart.

27. GRAC held twelve public hearings according to the following schedule:

| | |
|---|---|
| Hancock, MD | July 23, 2011 |
| Frederick, MD | July 23, 2011 |
| Largo, MD | July 25, 2011 |
| Rockville, MD | August 10, 2011 |
| Baltimore, MD | August 12, 2011 |
| La Plata, MD | August 24, 2011 |
| Annapolis, MD | August 30, 2011 |
| Columbia, MD | August 30, 2011 |
| Salisbury, MD | September 10, 2011 |
| Wye Mills, MD | September 10, 2011 |
| Bel Air, MD | September 12, 2011 |
| Randallstown, MD | September 12, 2011 |

28. At hearings and in submitted materials GRAC heard the requirement under *Thornburg v. Gingles,* 478 U.S. 30 (1986) of the creation of three compact majority-minority African American congressional districts; the history of racial gerrymandering for both partisan political purposes and incumbency protection purposes in Maryland; and plans for creation of three compact majority minority African American congressional districts.

29. On July 22, 2011, GRAC was presented with a third party map that drew three compact majority minority African American congressional districts submitted by the Fannie Lou Hamer PAC.  Further information in support of this map was submitted on July 27, 2011. This map and its accompanying demographic data are included as ATTACHMENT A.

30. On October 4, 2011, GRAC released its proposed congressional redistricting plan (the "GRAC Proposed Plan") to Governor O'Malley.  This map and its accompanying demographic data and measures of compactness are included as ATTACHMENT B.

31. On October 15, 2011, Governor O'Malley proposed a modified version of the GRAC plan.   This map and its accompanying demographic data and measures of compactness are included as ATTACHMENT C.

32. On October 17, 2011, a special session of the state legislature convened to consider the Governor's proposed congressional redistricting plan as Senate Bill 1.

33. On October 17, 2011, the legislature heard testimony from Congresswoman Donna Edwards, an African American member of Congress who voiced objections to Senate Bill 1's treatment of African American and minority communities.

34. On October 17, 2011, the state Senate defeated an amendment to Senate Bill 1 sponsored by state Senator Pipkin which would have created three compact majority-minority

African American congressional districts.  The Senate defeated the amendment by a vote of 13-33.

35. On October 18, 2011, the very next day, the state House defeated the same amendment to Senate Bill 1 which was offered by Delegate Parrott. The House defeated this amendment by a vote of 40-97. Senator Pipkin's plan and its accompanying demographic data and measures of compactness are included as ATTACHMENT D.

36. On October 18, 2011, the state House passed Senate Bill 1 with technical amendments with a vote of 91 in favor and 46 opposed.

37. On October 20, 2011, the state Senate passed Senate Bill 1 with technical amendments with a vote of 32 in favor and 13 opposed.

38. African American members of the legislature throughout the process requested information about the demographic numbers in the proposals.  Information was denied.

39. On October 20, 2011, Governor O'Malley signed Senate Bill 1 into law as emergency legislation to take effect immediately.

40. The Enacted Maryland Congressional Plan and its accompanying demographic data and measures of compactness are identical to the Governor's proposed map and are included as Attachment C.

41. Despite the dramatic growth in minority population since 2000, the Enacted Maryland Congressional Plan contains only two majority-minority districts, even though minorities constitute 41.6% of the state's population, and African Americans constitute 30.8% of the state's population.

42. Under this plan, African American and other minority communities are fractured among multiple districts for the benefit of white candidates.

43. This plan dilutes African American voting strength statewide by drawing only two majority-minority African American voting districts rather than the three compact majority-minority African American voting districts presented to the legislature that afford African Americans the opportunity to elect their preferred candidate.

44. This plan intentionally discriminates against minority groups by drawing districts that fracture minority communities for the benefit of white incumbents.

45. This plan uses the state "adjusted" census numbers in accordance with the "No Representation without Population Act" enacted April 13, 2011.

46. The "No Representation without Population Act" requires the drawing of congressional districts by assigning persons in correctional facilities located in the state back to their last known address within the state of Maryland.

47. These adjusted numbers result in population deviations in the districts ranging from -.67% (-4832) to +.94% (+6754).

48. These "adjusted" census numbers eliminated persons residing in state prisons whose last known address is outside the state of Maryland.

49. A comparison of the state adjusted numbers to the U.S. Census numbers indicate that 1321 people were eliminated in an attempt to comply with state law.

50. 939 known African American residents are eliminated from the adjusted state numbers.

51. 368 known white residents are eliminated from the state adjusted numbers.

52. The remaining 14 known people eliminated from the state adjusted numbers are of other races.

53. These statistics demonstrate that of the known but eliminated persons, 71.08% of them are African American.

54. The difference in ideal population numbers appears to be a direct result of the state of Maryland simply eliminating persons residing in state prisons whose last known address was outside the state of Maryland.

55. Section 2 of the Voting Rights Act of 1965, 42 U.S.C. 1973, applies nationwide and prohibits voting practices and procedures that result in the denial or abridgement of the right of any citizen to vote on account of race, color or membership in a language minority group. Section 2 is a permanent provision of the federal Voting Rights Act.

56. The Enacted Maryland Congressional Plan interacts with social and historical conditions to cause an inequality in the opportunity of African American voters to elect representatives of their choices as compared to white voters.

57. The Enacted Maryland Congressional Plan operates to dilute the voting strength of African Americans in the state of Maryland.

58. At all times relevant herein, Defendants have acted under color of State law.

## VI. CAUSES OF ACTION

## COUNT 1

*Intentional Discrimination in the Splitting of Minority Communities*

59. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

60. Including but not limited to the following examples, the Enacted Maryland Congressional Plan splits or "cracks" minority communities in the following places:

   a. In the City of Baltimore, the minority neighborhood near the intersection of Route 1 and Culmore Street is split to connect two white neighborhoods (see Attachment E)

    b.  In Prince Georges County, a near perfect horizontal line is drawn through the count to split black communities between a majority African American district and a majority Caucasian district (See Attachment F).

61. The state of Maryland's Enacted Congressional Redistricting plan intentionally discriminates on the basis of race in violation of the 14th and 15th Amendments to the U.S. Constitution and the Supreme Court's rule in *Gomillion v. Lightfoot*, 364 U.S. 339 (1960) (finding that creation of a twenty eight sided municipality for the purpose of splitting a community on the basis of race); (*See also Garza v. County of Los Angeles*, 918 F. 2d. 763 (9th Cir. 1990), *cert. denied* 498 U.S. 1028 (1991) (holding that intentional division of minority neighborhoods to preserve white incumbents constituted intentional discrimination) by splitting minority neighborhoods in Baltimore and its suburbs and in suburban areas of Maryland surrounding Washington, DC.

## **COUNT 2**

*Intentional Discrimination in the Creation of Districts with Bizarre Shapes and Racial Percentages on the Basis of Race*

62. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

63. Including but not limited to the following examples, the Enacted Maryland Congressional Plan splits minority communities in bizarre shapes in the following places:

    c.  In Baltimore, in the area of East Northern and Alemeda (See Attachment E);

    d.  In Prince George's County, a finger of a majority Caucasian  district reaches north through Prince George's County and forces a majority African American district to squeeze around it. (See Attachment G).

64. Including but not limited to the following examples, the Enacted Maryland Congressional Plan intentionally created "minority influence" districts where minority communities could have been kept more whole:

  e. Congressional District 2 in the Baltimore area – African American population of 34.22%

  f. Congressional District 5 in the Prince George's County area – African American population of 38.82%.

65. The state of Maryland's Enacted Congressional Redistricting plan intentionally discriminates on the basis of race in violation of the 14th and 15th Amendments to the U.S. Constitution and *Shaw v. Reno*, 509 U.S. 630 (1993) (holding that bizarre shaped districts explainable by only race not permissible); *See also Miller v. Johnson*, 515 U.S. 900 (1995) (Kennedy, J., concurring) (stating that districts with targeted racial percentages can constitute intentional discrimination); *Georgia v. Ashcroft*, 539 U.S. 461 (2003) (Kennedy, J., concurring)(districts with targeted minority influence percentages can constitute intentional racial discrimination)  by creating districts composed of minority neighborhoods in Baltimore and its suburbs and in suburban areas of Maryland surrounding Washington, DC that are bizarrely shaped and with targeted racial percentages.

## COUNT 3

*Intentional Discrimination by Violating the Equal Protection Principal of One Person, One Vote*

66. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

67. Including but not limited to the following examples, the Enacted Maryland Congressional Plan intentionally creates districts that are in violation of the equal protection principles:

g.  Congressional District 6 is overpopulated by 6,754 persons according to U.S. Census figures;

h.  Congressional District 7 is underpopulated by 4,832 persons according to U.S. Census figures.

68. The state of Maryland's Enacted Congressional Redistricting plan intentionally discriminates in violation of the 14th and 15th Amendments by violating the equal protection principles one person, one vote as determined in *Baker v. Carr*, 369 U.S. 186 (1962) (holding that courts have jurisdiction to consider equal population arguments), *Karcher v. Daggett*, 462 U.S. 725 (1983) (holding that congressional districts must be held to the strictest standards for equal population) and *Travis v. King*, 552 F. Supp. 554 (D. Haw. 1982) (holding that congressional district lines should be based on total population as determined by the U.S. Census Bureau).

## COUNT 4

*Intentional Discrimination by Adjusting Population Numbers to Omit Persons Disproportionately by Race*

69. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

70. The state of Maryland's Enacted Congressional Redistricting plan intentionally discriminates in violation of the 14th and 15th Amendments by omitting certain persons residing in state prisons whose last known addresses are from outside the State of Maryland and who are disproportionately minority in violation of *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252 (1977) (applying a disparate impact test to analyze a facially race neutral law).

## COUNT 5

*Section 2 of the Voting Rights Act*

71. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

72. The State of Mayland's Enacted Congressional redistricting plan results in a denial or abridgement of the right to vote of Plaintiffs on account of their race, color, or ethnicity, by having the effect of canceling out or minimizing their individual voting strength as minorities in Maryland.

73. The state of Maryland does not afford Plaintiffs an equal opportunity to participate in the political process and to elect representatives of their choice, and denies Plaintiffs the right to vote in elections without distinction of race, color or previous condition of servitude in violation of 42 U.S.C. Section 1973.  *See also Thornburg v. Gingles,* 478 U.S. 30 (1986) (defining the three pre-conditions and including in-depth discussion of the totality of the circumstances test).

**COUNT 6**

*Article One Section Two of the U.S. Constitution*

74. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

75. The state of Maryland's use adjusted U.S. Census figures for developing redistricting plans and violates Article One Section Two of the U.S. Constitution requiring use of an actual enumeration of the population of the state for determining congressional representation.  See *Travis v. King*, 552 F. Supp. 554 (D. Haw. 1982)  (holding that Article 1, Section 2 requires the use of U.S. Census numbers for Congressional redistricting absent a compelling justification); *Karcher v. Daggett*, 462 U.S. 725 (1983) (holding congressional districts to the strictest population equality standards).

**COUNT 7**

*Political Gerrymandering in Violation of the Fourteenth Amendment*

76. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

77. Including but not limited to the following examples, the Enacted Maryland Congressional Plan intentionally created districts that are politically gerrymandered in violation of the Fourteenth Amendment:

    i.  Congressional Districts 2, 3, and 7 – these districts individually and in combination are politically gerrymandered (See Attachment H);

    j.  Congressional Districts 6 and 8 – individually and in combination politically gerrymander Frederick and Montgomery Counties (See Attachment I);

78. The state of Maryland's Enacted Congressional District plans is the result of gross partisan gerrymanders, which violate the United States Constitution's Fourteenth Amendment equal protection guarantee by fragmenting cohesive communities of interest and political subdivisions between districts in support of no legitimate, consistently applied state policy.

79. No legitimate consistently applied state policy is supported or furthered by these plans' needless division of these communities.

80. This fragmentation of cultural, ethnic, geographic economic and political communities results in a dilution and debasement of Plaintiffs' voting rights, political power and influence. *See League of United Latin American Citizens v. Perry*, 548 U.S. 399 (2006).

81. The Enacted Maryland Congressional Plan constitutes intentional discrimination against minority voters.

### VII. ATTORNEYS' FEES

82. In accordance with 42 U.S.C. Sections 1973-1(e) and 1988, Plaintiffs are entitled to recover reasonable attorneys' fees, expenses and costs.

## VIII. PRAYER

WHEREFORE, Plaintiffs pray that this Court:

    (a)    assume jurisdiction of this action and request a three-judge panel pursuant to 28 U.S.C. Section 2284;

    (b)    issue a declaratory judgment finding that the Enacted Maryland Congressional Plan illegally and unconstitutionally dilutes the voting strength of African American voters in Maryland and is unlawful, null and void;

    (c)    issue a declaratory judgment finding that the Enacted Maryland Congressional Plan illegally and unconstitutionally constitutes intentional discrimination and is unlawful, null and void;

    (d)    issue a declaratory judgment finding the Enacted Maryland Congressional Plan illegally and unconstitutionally violates Article 1, Section 2 of the U.S. Constitution for the purposes of drawing congressional districts resulting in malapportionment and violations of the United States Constitution ;

    (e)    permanently enjoin Defendants from calling, holding, supervising or certifying any elections under the Enacted Maryland Congressional Plan. Plaintiffs have no adequate remedy at law other than the judicial relief sought herein, and unless the Defendants are enjoined from using the Enacted Maryland Congressional Plan, plaintiffs will be irreparably harmed by the continued violation of their statutory and constitutional rights;

16

(f)     set a reasonable deadline for state authorities to enact or adopt redistricting plans for congressional districts that do not dilute, cancel out or minimize the voting strength of African American voters;

(g)     if state authorities fail to enact or adopt valid redistricting plans by the Court's deadline, order new redistricting plans for congressional districts that do not dilute, cancel out or minimize the voting strength of African American voters;

(h)     adjudge all costs against Defendants, including reasonable attorneys' fees;

(i)     retain jurisdiction to render any and all further orders that this Court may grant any and all further relief to which Plaintiffs may show themselves to be entitled.

DATED: 11/16/2011

Respectfully submitted,

By: *James P. Mayes*

**Law Office of James P Mayes**
James Paul Mayes (Bar No. 10414)
mayesfedlaw@aol.com
Law Office of James P Mayes
4721 Chesterfield Place
Jamestown, NC  27282
Tel: (202) 255-2031
Fax: (336)841-5275

**Holtzman Vogel PLLC**
Jason Torchinsky (VA Bar No. 47481)*
jtorchinsky@holtzmanlaw.net
HOLTZMAN VOGEL PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
Tel: (540) 341-8808
Fax: (540) 341-8809

*Pro hac vice* petition pending

*Counsel for Plaintiffs*

17