**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

|  |  |  |
|---|---|---|
| | * | |
| PATRICIA FLETCHER, *et al.*, | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | Civil Action No:  8:11-cv-03220-RWT |
| | * | |
| LINDA H. LAMONE, *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**DECLARATION OF DAN FRIEDMAN**</u>

I, Dan Friedman, being competent to testify, hereby affirm on my personal knowledge as follows:

1.     The following documents are true and correct copies of documents found in the official bill file for Senate Bill 400 of 2010:

   a.     Letter to the Honorable Joan Carter Conway, Chair, Senate Education, Health and Environmental Affairs Committee from the Honorable Martin O'Malley, Governor (March 11, 2010);

   b.     Editorial, "A Proper Count of Inmates," The New York Times (Mar. 24, 2010);

   c.     Floor Report, Senate Bill 400;

   d.     Statement of American Civil Liberties Union of Maryland;

   e.     Editorial, "Prisons, Redistricting and the Census," The New York Times (Feb. 11, 2010);

   f.     Sam Roberts, "New Option For the States On Inmates In the Census," The New York Times (Feb. 11, 2010);

Exhibit 5

g.  Testimony of Peter Wagner, Executive Director, Prison Policy Initiative (Mar. 4, 2010);

h.  Testimony of Somerset County NAACP;

i.  Testimony of Maryland PIRG (Mar. 4, 2010);

j.  Statement of Support of Legislative Black Caucus of Maryland, Inc. (Mar. 4, 2010);

k.  Testimony of the Delta Lambda Chapter of Alpha Phi Alpha Fraternity, Inc. (Mar. 4, 2010); and

l.  Witness Sign-In Sheet for SB 400.

2.  I declare under the penalty of perjury that the forgoing is true and correct.

Executed on December 2, 2011.

Dan Friedman



**STATE OF MARYLAND**
OFFICE OF THE GOVERNOR

**MARTIN O'MALLEY**
GOVERNOR

STATE HOUSE
100 STATE CIRCLE
ANNAPOLIS, MARYLAND 21401-1925
410-974-3901
TOLL FREE: 1-800-811-8336

TTY USERS CALL VIA MD RELAY

March 11, 2010

The Honorable Joan Carter Conway
Chair, Senate Education, Health and
        Environmental Affairs Committee
2 West, Miller Senate Office Building
Annapolis, MD 21401

Dear Chairman Conway:

I am writing to you in support of Senate Bill 400 – No Representation Without Population Act, sponsored by Senator Catherine Pugh. Senate Bill 400 was heard in your committee last week.

As you know, the bill would require that the population count for purposes of redistricting not include individuals from other states that are incarcerated in Maryland. It would also require that prisoners in State and federal facilities be counted in their last known place of residence, rather than be recorded as residing at the State or federal facility.

Every 10 years, the country undergoes a process of counting everyone who lives in the United States. This Census process is required by the U.S. Constitution, and the count it provides is used for many purposes – among them the distribution of seats to states in the U.S. Congress, the distribution of over $300 million in federal aid, and for the redistricting of State, local and Congressional districts.

Maryland has a long history of trying to make as accurate a count as possible. An accurate Census count makes sure that Maryland neighborhoods, communities, and families are all fairly represented in State, federal, and local offices, and that Maryland as a whole receives the services and level of aid it is supposed to receive from the federal government.

I support Senate Bill 400 because it will help make Maryland's Census count more accurate. This in turn makes sure that Maryland citizens are more fairly represented at every level of government. Thank you for taking the time to consider my views.

Sincerely,

Governor

Cc:    The Honorable Catherine E. Pugh

Exhibit 5.a

Editorial – A Proper Count of Inmates - NYTimes.com
Case 8:11-cv-03220-RWT   Document 33-6   Filed 12/02/11   Page 4 of 22
3/24/10 10:44 AM

**The New York Times**

PRINTER-FRIENDLY FORMAT
SPONSORED BY



March 24, 2010

EDITORIAL

# A Proper Count of Inmates

The Census Bureau took an important first step toward electoral fairness when it announced that it would publish data on prison populations earlier than in the past, in time for the next round of legislative redistricting. This data, which will become available in the spring of 2011, will make it easy for state lawmakers to draw honest legislative districts made up of real residents instead of falsely inflated districts made up partly of prison inmates whose homes are often far away.

The early data will be welcome in states and localities that want to put an end to prison-based gerrymandering. But the real solution is for the Census Bureau to begin counting inmates at their homes instead of counting them as "residents" of their prisons.

The practice mattered little decades ago when the prison population was relatively small. But with about 1.4 million people in prison today, prison-based gerrymandering can shift political power from one end of a state or county or to another.

The practice persists even though the laws of most states say that prisons are not legitimate residences. But even lawmakers who represent prison districts are beginning to see that prison-based gerrymandering offends the principle of one person, one vote.

According to a new analysis by the Prison Policy Initiative, a research group, about 100 counties already remove prison inmates from the population count, and others may soon join them. Beyond that, more than a half dozen state legislatures are considering new laws that would require prison inmates to be taken out of the count for redistricting or counted at their homes.

It is too late to count prison inmates at their homes, not their cells, for the 2010 census. There is no excuse for not doing it in 2020.

Copyright 2010 The New York Times Company

Privacy Policy | Terms of Service | Search | Corrections | RSS | First Look | Help | Contact Us | Work for Us | Site Map

Exhibit 5.b



SENATE EDUCATION, HEALTH, AND ENVIRONMENTAL AFFAIRS COMMITTEE
JOAN CARTER CONWAY, CHAIR · COMMITTEE REPORT SYSTEM
DEPARTMENT OF LEGISLATIVE SERVICES · 2010 MARYLAND GENERAL ASSEMBLY

# FLOOR REPORT
### Senate Bill 400

### No Representation Without Population Act

**SPONSORS:** Senator Pugh, et al.

**COMMITTEE RECOMMENDATION:** Favorable with TWO amendments

**SUMMARY OF BILL:**

This bill requires that population counts used to create legislative districts for the General Assembly and for county governing bodies exclude incarcerated individuals who were not State residents prior to their incarceration in either State or federal correctional facilities. The bill also requires that incarcerated individuals be counted as residents of their last known address before their incarceration if they were State residents prior to their incarceration.

**COMMITTEE AMENDMENTS: TWO**

**Amendment 1** makes changes to the purpose and function paragraphs.

**Amendment 2** applies the same population counts to congressional and municipal districts.

**FISCAL IMPACT:**

General fund expenditures increase by $50,000 in FY 2011 for the Department of Legislative Services to implement the bill's requirements.

**BACKGROUND:**

The State of Maryland is divided into 47 legislative districts, which are redrawn every 10 years based on the results of the decennial national census to ensure equal representation based on the concept of "one person, one vote." Each district elects one senator and three delegates; a district may be subdivided into three single member delegate districts or one single member district and one multimember district.

The average annual inmate population in State correctional facilities is approximately 27,000; there were 21,746 prisoners as of December 2009. The federal Bureau of Prisons reports 1,503 prisoners in the federal prison in Cumberland.

Exhibit 5.c



3600 Clipper Mill Road, Suite 350 Baltimore MD 21211
410-889-8555 • Fax 410-366-7838 • Email - ACLU@ACLU-MD.ORG

## Testimony for the Senate Education, Health & Environmental Affairs
### March 4, 2010

### SB 400—No Representation Without Population Act

### SUPPORT

The U.S. Census Bureau counts incarcerated people where they are confined, not where they are from. Using these counts to draw legislative districts artificially enhances the votes of districts with prisons and unfairly dilutes the votes of all other districts, especially the districts that the prisoners call home.

Taxpayers statewide fund prisons. However, their impact is uneven and disproportionate. The prisons generate income (and population) for their communities while they decimate other communities, which are already challenged by disproportionate lack of resources and advocacy. While Washington County houses three state prisons, in Baltimore City, the former home to 68% of the state's prisoners, only 17% of the state's prisoners are incarcerated in the City.

Recognizing this problem, the U.S. Census Bureau announced in February 2010 that it will for the first time provided census block data for correctional facilities early enough for state and local redistricting bodies to use in draw fair districts. This bill will allow Maryland to take full advantage of this new data to correct serious statewide imbalances in representation.

**Representation Without Population in Maryland Distorts Voting Power Statewide**
There are approximately 25,000 state and federal prisoners in Maryland. While Baltimore City is home to 68% of the state's prisoners, the vast majority of them are incarcerated elsewhere in prisons that are consolidated in a handful of legislative districts--districts that tend to be rural and sparsely populated. These prison districts artificially gain population when prisoners from elsewhere are counted in the prison district while places like Baltimore City unfairly lose population.

The impact is significant in jurisdictions throughout the state--from Washington County to Baltimore City to Somerset County. For example, Washington County gains thousands of residents due to the three state prisons located there—18% of Washington County's population is incarcerated. This enhances the voting power of the prison

Cynthia Boersma • Legislative Director • 410-693-4877

Exhibit 5.d

districts at the expense of all other rural districts statewide. *Every group of 4 residents in District 2B has as much political influence as 5 residents elsewhere in the state.*

In Somerset County, local District 1 houses Eastern Correctional Institution (ECI).   As a result, 64% of the total population and 64% of the African American population of District 1 are prisoners in ECI.  Discounting the prison population, only about 28% of District 1 is voting age, compared to other Somerset Districts that have voting age populations of more than 75%.  *A vote in this district is worth 2.8 times more than a vote in neighboring districts.*

**Voting Rights Act & Dilution of African American Votes**
The impact on African American voters across the state is profound:

- Of the 5,628 African Americans in District 2B/Washington County, 90% are incarcerated residents from other parts of the state.

- Somerset County settled a 1985 Voting Rights Act lawsuit by creating its local District 1 as a majority-minority "remedial" district.   However, 64% of District 1's total population and 64% of its African-American population are prisoners at ECI.  District 1's "majority" minority population is majority of prisoners.  Somerset County has not ever elected an African American to County Commission.  This includes District 1 never having been represented by an African American despite redistricting in the Voting Rights Act settlement.

**Nationwide movement to correct the prison miscount**
Over 100 jurisdictions have corrected unfair vote enhancement by excluding prison population from the prison district.  Four states require local governments to fix the prison miscount.  State legislation to correct the prison miscount is pending in Congress and in New York, Illinois, Florida and Wisconsin, in addition to this bill.

As noted above, the U.S. Census Bureau has acknowledged the problem and is supporting redistricting efforts to correct it by publishing relevant data before redistricting occurs.

This bill corrects the imbalance and ensures fair representation statewide with a very common sense fix.  Count prisoners in their home districts.  The bill is structured to make the best and most efficient use of newly available data from the U.S. Census.  The bill should receive a favorable report.



For more information about
Prison-Based Gerrymandering, see our
website and weekly newsletter at
http://www.prisonersofthecensus.org

# Select counties and cities that adjust Census data to correct for the prison miscount

More than 100 counties and cities form choose to ignore the prison populations when drawing districts or designing weighted voting systems.

Here is a select list:

- San Luis Obispo County, CA
- Madera County, CA
- Gulf County, FL
- Milledgeville, GA
- Calhoun County GA,
- Dooly County, GA
- Macon County, GA
- Tattnall County, GA,
- Telfair County, GA,
- Wilcox County, GA,
- Knox County, IL
- West Feliciana Parish, LA
- Gardner, MA
- Baraga County, MI
- Branch County, MI
- Chippewa County, MI
- Gratiot County, MI
- Ionia County, MI
- Jackson County, MI
- Lapeer County, MI
- Lenawee County, MI
- Manistee County, MI
- Marquette County, MI
- Montcalm County, MI
- Muskegon County, MI
- Greene County, NY
- Franklin County, NY
- Cayuga County, NY
- Chemung County, NY
- Clinton County, NY
- Dutchess County, NY
- Essex County, NY

## Some states require local government fix the prison miscount

- Colorado requires counties to subtract incarcerated populations before conducting county redistricting.

- Virginia law encourages counties where the population is more than 12% incarcerated to remove the prison populations prior to redistricting.

- The Mississippi Attorney General instructs counties to remove all incarcerated people from the data used for redistricting, except for people who resided in the county prior to incarceration.

- New Jersey requires school boards to ignore prison populations when drawing school board districts.

- Orange County, NY
- Orleans County, NY
- Schoharie County, NY
- Sullivan County, NY
- Washington County, NY
- Wyoming County, NY
- Lima, OH
- Greer County, OK
- Allendale County, SC
- Edgefield County, SC
- Lancaster County, SC
- Lee County, SC
- Marlboro County, SC
- McCormick County, SC
- Brunswick County, VA
- Greensville County, VA
- Richmond County, VA
- Sussex County, VA

1/19/10

Tuesday, November 24, 2009
A10  www.Delmarvalow.com

# THE DAILY TIMES

A Gannett Newspaper
Founded in 1886

## OUR VIEW

# Census figures skewed by ECI

## Inmates shouldn't be included in minority voting district.

The Voting Rights Act was adopted in 1965 to codify the 15th Amendment's guarantee that throughout the United States, no one shall be denied the right to vote on account of race or skin color. Considered one of the most successful pieces of civil rights legislation every adopted by Congress, it was extended in 1970, 1975 and again in 1982.

**In summation**

**District 1 has not elected an African-American member to the Somerset County Commissioners in part because a whopping 42 percent of the district's population is made up of ECI inmates.**

You would not think that legislation was needed to ensure that the terms of an amendment to the U.S. Constitution will not be violated, but if you believe that, you are not taking into account the extreme emotions and prejudices that still accompany that issue.

In 1986, a Voting Rights Act lawsuit settlement in Somerset County included creation of District 1, the so-called minority district, to encourage the election of at least one African-American to the County Commissioners. In a county with a population that is roughly 42 percent African-American and 2 percent Hispanic, never once has that happened.

Here's at least part of the problem: Eastern Correctional Institution is included in District 1, and its inmates account for two-thirds of the total district population. With another U.S. Census year on the horizon, a citizens task force in Somerset County is seeking to exclude the inmate population from the District 1 tally — but only for purposes of creating voting districts.

This Somerset County district, however, is different because it was created as part of a court settlement. The purpose of the district's existence is to enable the election of an African-American member to the County Commissioners; its lines were drawn specifically to support that goal.

Creation of the district itself predated the existence of ECI by about a year.

The fact that 42 percent of the total population of District 1 is not eligible to vote at all should be taken under special consideration in this case, since that fact is likely skewing the numbers and possibly preventing the district from achieving the goal for which it was created.

ECI inmates should, of course, be included in the census, by virtue of the fact they are U.S. citizens and residents. But in a voting district created for a specific purpose that is likely not being achieved because the prison population skews the numbers to such a high degree, a separate population breakdown that excludes the inmates would be a more fair and reasonable way to achieve that end.

SB 400

THE NEW YORK TIMES **EDITORIALS/LETTERS** THURSDAY, FEBRUARY 11, 2010

# The New York Times

ARTHUR OCHS SULZBERGER JR., *Publisher*

*Founded in 1851*

ADOLPH S. OCHS
*Publisher 1896-1935*

ARTHUR HAYS SULZBERGER
*Publisher 1935-1961*

ORVIL E. DRYFOOS
*Publisher 1961-1963*

ARTHUR OCHS SULZBERGER
*Publisher 1963-1992*

**The News Sections**

BILL KELLER, *Executive Editor*
JILL ABRAMSON, *Managing Editor*
JOHN M. GEDDES, *Managing Editor*
WILLIAM E. SCHMIDT, *Deputy Managing Editor*

*Assistant Managing Editors*

DEAN BAQUET          TRISH HALL
RICHARD L. BERKE     GLENN KRAMON
TOM BODKIN           GERALD MARZORATI
SUSAN EDGERLEY       MICHELE McNALLY

**The Opinion Pages**

ANDREW ROSENTHAL, *Editorial Page Editor*
CARLA ANNE ROBBINS, *Deputy Editorial Page Editor*
DAVID SHIPLEY, *Deputy Editorial Page Editor*

**The Business Management**

SCOTT H. HEEKIN-CANEDY, *President, General Manager*
DENISE F. WARREN, *Senior V.P., Chief Advertising Officer,*
   *General Manager, NYTimes.com*
YASMIN NAMINI, *Senior V.P., Marketing and Circulation,*
   *General Manager, Reader Applications*
ALEXIS BURYK, *Senior V.P., Advertising*
ROLAND A. CAPUTO, *Senior V.P., Chief Financial Officer*
THOMAS K. CARLEY, *Senior V.P., Planning*
TERRY L. HAYES, *Senior V.P., Operations and Labor*
MICHAEL VALENTINE, *V.P., Human Resources*

MARTIN GOTTLIEB, *Editor, Global Editions*

# Prisons, Redistricting and the Census

The Census Bureau struck a blow for electoral fairness recently when it decided to speed up publication of its data on prison populations to ensure it is available for the next round of redistricting. We hope this new data, which will be released in the spring of 2011, will bolster the efforts of reformers who are trying to end prison-based gerrymandering — the cynical practice of drawing legislative districts with populations inflated by inmates who do not have the right to vote and whose actual residences are often far away.

Too often, redistricting committees pad underpopulated districts by redrawing boundaries to include large prisons. This practice typically increases the political power of rural areas where prisons are built and diminishes the influence of the urban areas to which inmates eventually return. According to a study by the Prison Policy Initiative, a research group, in some counties the phantom prison constituents make up as much 20 percent of the population.

The decision to release the data early was taken at the behest of Representative William Lacy Clay, a Democrat of Missouri, who has long been concerned about the inequities brought about prison-based gerrymandering. The data will be especially helpful to the 100 or so counties that — at great effort — already remove prison inmates from the count at redistricting time. And it should give fresh impetus to legislation pending in several states — including New York — that would require them to determine the home addresses of inmates and draw legislative districts based on that information.

The Census Bureau still has to fix another problem: the failure to count prison inmates in their home districts. The questions for the 2010 census have been written already. The bureau should get to work on this problem with the aim of having it fixed long before the next count in 2020.

Exhibit 5.e

SB 400

# The New York Times

THURSDAY, FEBRUARY 11, 2010

## New Option
## For the States
## On Inmates
## In the Census

By SAM ROBERTS

For decades, predominantly rural and Republican districts have had extra clout in state and local legislative bodies because their large inmate populations were counted as local residents in apportioning representation. Now, the Census Bureau has agreed to give states a tool that could dilute the political power of those districts.

In May 2011, in time for Congressional and legislative reapportionment, the bureau will identify exactly where group quarters like prisons are and how many people occupy them. States would then have the option of counting them in the local population or not.

"This removes a technical problem," said Peter Wagner, executive director of the Prison Policy Initiative, an advocacy group that favors alternatives to prison sentences and urges that inmates be counted in their hometowns.

"The census is going to say where the prisons are and how many people are in them, which will enable states the practical choice of counting them in the wrong place or not counting them at all."

Mr. Wagner and other groups had originally asked the bureau to determine the home addresses of inmates and to count them at those addresses, but the 2010 census process was too far along for that change to be considered.

A number of states — including Florida, Illinois, Maryland, New York and Wisconsin — are weighing legislation requiring that prisoners be counted at their last known address — for purposes of reapportionment, a change that would likely favor larger and mostly Democratic cities.

In New York, the change could prove pivotal because of the seesaw fight for control of the State Senate and the fact that the state

*A possible change in the political strength of some rural and G.O.P. districts.*

faces the loss of at least one Congressional seat after the 2010 census.

"Most people in prison in America are urban and African-American or Latino," Representative William Lacy Clay, a Missouri Democrat who is chairman of the census subcommittee, wrote the bureau, but the 2010 census "will again be counting incarcerated people as residents of the rural, predominantly white communities that contain prisons."

Bureau officials have agreed to release the more specific data

several months earlier than usual to let states and localities consider it in apportioning districts for 2011 and 2012 races.

Other groups that have lobbied for the change include the Brennan Center for Justice at New York University Law School, the NAACP Legal Defense and Education Fund Inc. and Demos, a research and advocacy organization.

"About 100 rural governments currently remove the prison populations manually, but this difficult and error-prone process was impossible to do on a state level," Mr. Wagner said. "For the first time, state and local governments will have access to prison population counts in time for redistricting. This new data will allow state and local governments to avoid prison-based gerrymandering."

Until recently, one of the three council districts in Anamosa,

Iowa, had about the same population as the other two, even though all but 58 of its 1,400 population were prison inmates.

In St. Lawrence County in upstate New York, each legislator on the county board represents about 7,500 residents, but in two districts more than 1,000 of those residents are prison inmates.

Exhibit 5.f

Testimony of Peter Wagner
Executive Director, Prison Policy Initiative
Before the
Education, Health & Environmental Affairs Committee
of the Maryland State Senate
March 4, 2010

Thank you, Madame Chairman and members of the Committee for inviting me here today. My name is Peter Wagner and I am Executive Director of the Prison Policy Initiative, a non-profit, non-partisan research organization-based in Massachusetts. For the last decade, we have studied how the U.S. Census counts people in prison and worked to quantify the policy and legal implications flowing from those technical decisions.

Before you today is SB400, the "No Representation Without Population Act" which would correct within the state of Maryland a long-standing flaw in the decennial Census that counts incarcerated people as residents of the wrong location. Crediting incarcerated people to the census block that contains the prison, rather than the census block that contains their home address, results in a significant enhancement of the weight of a vote cast in districts with prisons at the expense of all other residents in all other districts in the state.

I would like to briefly address the factual situation in Maryland and then put Maryland's proposed reforms in a national context.

Each decade, Maryland and its counties redraw their legislative districts on the basis of population to ensure that each district contains the same population as other districts. In this way, all residents are given the same access to government, fulfilling the Supreme Court's "One Person One Vote" rule.

However, unless the state takes action to correct a flaw in the Census Bureau's data, this effort to draw fair districts will fail.

The Census Bureau counts incarcerated people as residents of the prison location, even though they cannot vote and are not a part of the community that surrounds the prison. In Somerset County, a large prison is 64% of the 1st Commission District, giving each resident in that district 2.7 times as much influence as residents in other districts. Using prison populations to enhance the weight of a vote in districts that contain prisons dilutes the votes of all other residents in the county.

Counting prisoners in the wrong place also distorts state legislative districts. For example, in House District 2B (near Hagerstown), 18% of the district's population consists of incarcerated residents from other parts of the state. Padding this legislative district with

additional prison populations dilutes the votes of all residents in other parts of the state. The state has decided, in effect, that every group of 4 people who live next to the large prisons in District 2B should have as much representation as 5 people who live anywhere else in the state.

The basic principle of our democracy is that representation is distributed on the basis of population. Crediting incarcerated people to the wrong location has the unfortunate and undemocratic result of creating a system of "Representation Without Population."

The solution is simple. Maryland should join New York, Illinois and other states in developing a method to fix the census. The state is required by federal law to redistrict each decade, but it is not required to use federal Census data to do so. See Mahan v. Howell, 410 U.S. 315, 330-332 (1973) (rejecting Virginia's argument that it was compelled to use Census Bureau assignments of residences of military personnel in its state legislative redistricting, and suggesting that a state may not use Census data it knows to be incorrect). As the Third Circuit has explained:

> Although a state is entitled to the number of representatives in the House of Representatives as determined by the federal census, it is not required to use these census figures as a basis for apportioning its own legislature. Borough of Bethel Park v. Stans, 449 F.2d 575, 583 n.4 (3rd Cir. 1971).

Furthermore:

> Neither in Reynolds v. Sims nor in any other decision has this Court suggested that the States are required to include aliens, transients, short-term or temporary residents, or persons denied the vote for conviction of crime in the apportionment base by which their legislators are distributed and against which compliance with the Equal Protection Clause is to be measured. The decision to include or exclude any such group involves choices about the nature of representation with which we have been shown no constitutionally founded reason to interfere. Burns v. Richardson, 384 U.S. 73, 92 (1996)

In fact, there is a long tradition of state and local governments fixing shortcomings in Census data. The Kansas Constitution requires the legislature to adjust federal census data to exclude nonresident military personnel and nonresident students and count resident military and students at their home addresses when conducting legislative apportionment. Kan. Const. art. 10, § 1.

The Alaska Supreme Court held that it was permissible under the Fourteenth Amendment to use a formula based on registration numbers to reduce the census tally of military personnel in the population base used for state legislative redistricting. See Groh v. Egan, 526 P.2d 863, 870, 873-74 (Alaska 1974).

The Supreme Court of Oregon has held that the Secretary of State is not obligated to rely on census data in apportioning districts. <u>Hartung v. Bradbury</u>, 33 P.3d 972, 598 (Or. 2001). Indeed, the court held that the Secretary of State violated the Oregon Constitution by failing to make corrections to federal census data to place a prison population in the correct census block. <u>Id</u>. at 599.

An Illinois Appeals Court upheld excluding prisoners from the population when apportioning a county into districts. <u>Knox County Democratic Cent. Committee v. Knox County Bd.</u>, 597 N.E.2d 238 (Ill. App. Ct. 1992). The court stated that "to require that ineligible voters must always be included in the apportionment base merely because they were included in the census would violate the Equal Protection Clause." Id. at 239.

New Jersey statutes require, and the state appellate court upheld, a requirement that prison inmates be excluded from the population for purposes of apportionment in certain school districts. <u>Board of Educ. of Northern Burlington Co. Regional School Dist. v. New Jersey State Bd. of Educ.</u>, 858 A.2d 576, 580-81 (N.J. Super. Ct. App. Div. 2004)

Colorado and Virginia have enacted legislation allowing and encouraging, respectively, a departure from federal Census data so as to exclude prison populations for purposes of county or local redistricting. See Colo. Rev. Stat. § 30-10-306.7(5)(a) (requiring boards of county commissioners to subtract, from federal census numbers, the number of persons confined in any correctional facility in the county when calculating population equality for purposes of redistricting; Va. Code Ann. § 24.2-304.1 (C) (permitting governing body to exclude prison population in redistricting when such population exceeds 12 percent of the total county population).

The Mississippi Attorney General directed Wilkinson County to adjust census data for redistricting purposes, stating that prison populations:

> should not be used in determining the population of county supervisor districts for redistricting purposes by virtue of their temporary presence in a detention facility or jail in the county, unless their actual place of residence is also in the county.

Mississippi Attorney General Opinion 2002-0060, 2002 WL 321998 (February 22, 2002).

Beyond these state-sanctioned changes, many counties have, on their own authority, modified the Census to change where incarcerated people are counted when drawing districts or designing weighted voting systems.[1]

---

[1] *See* Prison Policy Initiative, "Select counties and cities that adjust Census data to correct for the prison miscount," available at http://www.prisonersofthecensus.org/factsheets/select_cities_and_counties.pdf.

This year, for the first time, the Census Bureau will be publishing an early data file that will assist states and counties in finding correctional facilities in the census data. The state can simply collect the home addresses of incarcerated people and adjust the Census data prior to redistricting to count these populations at home.

Before concluding, I would like to address one the question of federal funding and whether a change in current practices on how incarcerated persons are counted would affect how federal funding is distributed. In short, federal funding would not be affected by either SB400 or a national change at the Census Bureau in the future. My research has shown that while decisions about where to count prison populations are important from the standpoint of fair representation, this issue actually has little impact on distribution of federal funding to communities. Most federal funding based on Census data consists of block grants to states, meaning that the federal government gives money to states based on their total population. Once the states receive the federal money, they are free to distribute it as they see fit within their own borders. For state block grant purposes, in other words, it does not matter where within any given state an incarcerated person is counted.[2] Policy in this area should be based on issues of fair political representation and not on concerns about funding distribution. Furthermore, SB400, the "No Representation Without Population Act" would apply only to redistricting at the state and local level and would not affect any funding distributions.

The basic principle of our democracy is that representation is distributed on the basis of population. SB400/HB496 will end the practice of granting "Representation Without Population."

I thank you for your time today and I would be happy to answer any questions you may have about the issue of prison-based gerrymandering, how other states are addressing the problem, and what Maryland may do to eliminate it.

---

[2] For more information on this point, *see* Prison Policy Initiative, "The Census Bureau's Prison Miscount: It's about political power, not funding," available at http://www.prisonersofthecensus.org/factsheets/ny/political_power_not_money.pdf.



SOMERSET COUNTY NAACP - 31245 EDEN ALLEN ROAD - EDEN, MARYLAND - 21822 - (443) 235-8126

**Testimony for the Senate Education, Health & Environmental Affairs Committee
March 4, 2010**

**SB 400 – No Representation Without Population Act**

**SUPPORT**

We are African-American residents of Somerset County and organizers of a Community Task Force to promote racial diversity in Somerset County and we support SB 400. This bill would require that in future rounds of legislative redistricting, people residing in Maryland state prisons be counted in their home districts, and not in the places where they are incarcerated.

This bill matters a lot in Somerset County. Here's why: Somerset County is 42 percent African American, but never in history has it elected an African American to the County Commission or to any top job in Somerset County government. We believe that one reason for the continued exclusion of African Americans from the County Commission is the large prison in our County, Eastern Correctional Institution (ECI).

A little background: In the mid-1980s – before ECI opened – black voters sued Somerset County under the federal Voting Rights Act, alleging that the County's at-large election system unfairly discriminated against African Americans. To resolve that lawsuit, Somerset County changed from the at-large system to a system of five single member Commission districts, one being majority black in population. A few years later, ECI was opened, and after that when the County engaged in redistricting, it counted the prison population as part of the majority black district. The problem, of course, is that the inmates at ECI cannot vote. So creating a district dominated by the prison might make it look majority black on paper, but it does not function like a true minority district. In fact, ECI now constitutes 70 percent of the total population of the "majority black" district, and 70 percent of the district's African American population. We believe inclusion of the prison in this district may be a big part of why it has never elected an African American candidate, even though numerous black candidates have run over the years. Instead, in one election cycle after another, the same white incumbent has won reelection from the "minority" district.

The exclusion of African Americans from the Somerset County Commission was one of the issues highlighted last May in a report by the American Civil Liberties Union of Maryland and the Somerset County Branch of the NAACP, exposing stark racial disparities throughout Somerset government. To respond to this report, a number of us organized the Somerset County Task Force on Diversity, which worked over the summer of 2009 to develop recommendations for the how the County can address these racial

Exhibit 5.h

disparities and promote greater diversity in government here.  One of the Task Force Recommendations was for the County to consider excluding the ECI population from our local redistricting process following the 2010 Census – just the thing that the No Representation Without Population Act would do statewide.

The Somerset County Commissioners – one of whom was a member of our Task Force – have indicated that they are fully open to the option of excluding the nonvoting prison population from the 2012 redistricting plan, if that would meet legal requirements and make the system a fairer one.  Thus, the General Assembly's passage of the No Representation Without Population Act would seem to ensure that this important change is made in Somerset County. For these reasons, we urge a favorable report for SB 400.

# Maryland PIRG
## Standing Up
## To Powerful Interests

**www.marylandpirg.org** | **info@marylandpirg.org**
3121 St. Paul St., Suite 26     190 Duke of Gloucester St
Baltimore, MD 21218-3857     Annapolis, MD 21401
Phone: (410) 467-9389     Phone: (410) 267-1160
Fax: (410) 366-2051

March 4, 2010

Testimony before the Education, Health & Environmental Affairs Committee
Maryland State Senate

**SB 400 - No Representation Without Population Act**

Position: FAVORABLE

Maryland PIRG requests a favorable report of Senate Bill 400, which would ensure
prisoners are counted in their home district (not the district where the prison is located)
for the purpose of drawing legislative districts.

Currently, legislative districts are drawn to include prison populations based on the
location of the prisons. However, most prisoners are not from the legislative district of
the prison, and most do not stay in the legislative district of the prison once they are
released. As a result, this practice unfairly distributes the voting power of individuals in
the state. For example, prisoners make up 18% of the population of Washington County,
and 64% of the population in District 1 in Somerset County. And of course, prisoners in
Maryland do not have the same voting rights as other citizens.

SB 400 can correct this imbalance by using the U.S. Census Bureau's new data that will
contain specific information for correctional facilities. The U.S. Census Bureau
recognized the problem before conducting the most recent census, and consequently, has
worked to collect the information and ensure it is available for state use.

Thank you for your consideration, and we hope to see a favorable report for SB 400.

Exhibit 5.i



# LEGISLATIVE BLACK CAUCUS OF MARYLAND, INC.

The Maryland House of Delegates, 6 Bladen Street, Room 300, Annapolis, Maryland 21401
410-841-3185 • 301-858-3185, Fax 410-841-3175 • 301-858-3175 • Black.Caucus@house.state.md.us

**EXECUTIVE OFFICERS**

*Chair*
Delegate Veronica L. Turner, District 26

*1st Vice Chair*
Senator Catherine E. Pugh, District 40

*2nd Vice Chair*
Delegate Aisha N. Braveboy, District 25

*Treasurer*
Delegate Joanne C. Benson, District 24

*Secretary*
Delegate Shawn Z. Tarrant, District 40

*Chaplain*
Delegate Emmett C. Burns, Jr., District 10

*Parliamentarian*
Delegate Rudolph C. Cane, District 37A

*Historian*
Senator Delores G. Kelley, District 10

*Chair Emeritus*
Senator Verna L. Jones, District 44

*Executive Director*
Deriece K. Bennett

**MEMBERS**

Senator Nathaniel Exum, District 24
Senator Ulysses Currie, District 25
Senator C. Anthony Muse, District 26
Senator Lisa A. Gladden, District 41
Senator Joan Carter Conway, District 43
Senator Nathaniel J. McFadden, District 45
Senator David Harrington, District 47
Delegate Adrienne Jones, District 10
Delegate Shirley Nathan-Pulliam, District 10
Delegate Frank S. Turner, District 13
Delegate Herman L. Taylor, Jr., District 14
Delegate Craig L. Rice, District 15
Delegate Alfred C. Carr, Jr., District 18
Delegate Joseline Peña-Melnyk, District 21
Delegate Tawanna P. Gaines, District 22
Delegate Gerron Levi, District 23A
Delegate Marvin E. Holmes, Jr., District 23B
Delegate Carolyn J. B. Howard, District 24
Delegate Michael L. Vaughn, District 24
Delegate Dereck Davis, District 25
Delegate Melony Griffith, District 25
Delegate Jay Walker, District 26
Delegate James E. Proctor, Jr., District 27
Delegate Frank M. Conaway, Jr., District 40
Delegate Barbara Robinson, District 40
Delegate Jill P. Carter, District 41
Delegate Nathaniel T. Oaks, District 41
Delegate Curtis S. Anderson, District 43
Delegate Keith E. Haynes, District 44
Delegate Ruth M. Kirk, District 44
Delegate Melvin L. Stukes, District 44
Delegate Talmadge Branch, District 45
Delegate Cheryl D. Glenn, District 45
Delegate Hattie Harrison, District 45
Delegate Jolene Ivey, District 47

**To:**   The Honorable Joan Carter Conway, Chair
Education, Health and Environmental Matters Committee and
Members of the Committee

**From:** Delegate Veronica Turner, Chair

**Date:** March 4, 2010

**Re:**   **SB 400- No Representation without Population Act**

The Legislative Black Caucus of Maryland, Inc. voted to **support** Senate Bill 400. This bill requires that incarcerated individuals to be counted at their last known residence before incarceration, instead of the location of their incarceration for the decennial census.

This legislation will help avoid prison-based gerrymandering and lead to the reapportionment of districts and new allocations of resources. Senate Bill 400 is a Caucus priority; therefore, we would appreciate your **favorable support** for this legislation.

Exhibit 5.j



ALPHA PHI ALPHA FRATERNITY, INC. ®
# DELTA LAMBDA CHAPTER
1501 N. Dukeland St · Baltimore, MD 21216
DeltaLambda@alphaeast.com | www.DeltaLambda.org

**Testimony of the Delta Lambda Chapter of Alpha Phi Alpha Fraternity, Inc.**
**Before the Education Health and Environmental Affairs Committee**

**Regarding Senate Bill 400**

**Thursday March 4, 2010**

Madam Chairwoman and committee members,

My name is Charles Sydnor III and I am here today representing the Delta Lambda Chapter of Alpha Phi Alpha Fraternity, Inc.   Today, on its behalf, I request a favorable report from the committee on Senate Bill 400.

Alpha Phi Alpha Fraternity, Inc., the first intercollegiate Greek-letter fraternity established by Black men was founded at Cornell University in Ithaca, New York and headquartered in Baltimore, Maryland.   Since its founding on December 4, 1906, Alpha has supplied voice and vision to the struggle of people around the world.   While Alpha's membership includes a number of distinguished men including former U.S Senator Edward Brooke, Martin Luther King, Jr., W.E.B. Dubois and former Vice President Hubert Humphrey.   Alpha also claims a number of distinguished Marylanders that have carried forth the fraternity's aims, including Supreme Court Justice Thurgood Marshall, Aris T. Allen and a former member of the Maryland Senate Harry A. Cole.

The fraternity's aims include has scholastic achievement, fellowship and the uplifting of humanity.   In furtherance of those aims several members of the Baltimore chapter of Alpha Phi Alpha Fraternity, Inc., Delta Lambda chapter,[1] have come here this afternoon to offer testimony regarding this Senate Bill 400.

Senate Bill 400, aptly named the "No Representation Without Population Act", rights a practice in which Maryland has engaged. In the past, the State of Maryland has used some of the data collected by the U.S Census Bureau to meet its constitutional obligation to redistrict legislative districts.   However, the Census counts incarcerated people where they are confined rather than where they resided prior to incarceration.   While the U.S Census Bureau may have its own reasons for counting people where they are at the moment in history, there is no reason for the State of Maryland to use that same data to draw its legislative districts.

---

1 The Delta Lambda Chapter was chartered in Baltimore on May 23, 1919 and has given over 90 years of service to the metropolitan area.

Exhibit 5.k

Using this data without adjusting for this particular population artificially enhances the voting power of districts with prisons and it unfairly dilutes the voting power of other legislative districts around Maryland, including the legislative district where the incarcerated person once resided.

I conclude by noting that Maryland must end its current practice of unfairly diluting some voters' representation. Voters in highly populated districts should not be under-represented while voters in less populated ones are "over-represented." Senate Bill 400 rightly moves Maryland towards the Supreme Court's "one person, one vote" doctrine put forth in *Baker v. Carr*. Please issue a favorable report regarding Senate Bill 400. Thank you.

PLEASE PRINT

SENATE EDUCATION, HEALTH, AND ENVIRONMENTAL AFFAIRS COMMITTEE

Witness Sign-up Sheet   Page _____ of _____

| Hearing Date: | Thursday, March 4, 2010 | Bill Number: | SB0400 | Crossfile: | HB0496 |

Sponsor:    Senator Pugh, et al

Entitled    No Representation Without Population Act

## LIST OF SPEAKERS AND INTERESTED PARTIES

| NAME | PHONE | ADDRESS | REPRESENTING | FAV | FWA | UNF |
|------|-------|---------|--------------|-----|-----|-----|
| Peter Wagner | | | Prisoners of the Census | ✓ | | |
| Cindy Boersma | | | ACLU of MD | ✓ | | |
| Clarence Bell | | | Somerset County Task Force on Racial Disparities in County Govt | ✓ | | |
| Kirkland Hall | | | " | ✓ | | |
| Craig Mathias (Rev.) | | | " | ✓ | | |
| Ken Ballard | | | → | ✓ | | |
| Ryan O'Donnell | | | Common Cause of MD | ✓ | | |
| Elbridge James | | | NAACP - Maryland | ✓ | | |
| Charles Sydanor III | 46-530 8504 | | Delta Phi Lamda Chap. Alpha Phi Alpha Fraternity, Ina | ✓ | | |

FAV (for), FWA (favor with amendments), UNF (against)

Exhibit 5.1