UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

SEP 0 2 2011

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| SHANNON PEREZ; HAROLD DUTTON, JR.; GREGORY TAMEZ; SERGIO SALINAS; CARMEN RODRIGUEZ; RUDOLFO ORTIZ; NANCY HALL and DOROTHY DEBOSE<br><br>Plaintiffs<br><br>-and-<br><br>EDDIE BERNICE JOHNSON, SHEILA JACKSON-LEE, and ALEXANDER GREEN, MEMBERS OF THE UNITED STATES CONGRESS<br><br>-and-<br><br>TEXAS LEGISLATIVE BLACK CAUCUS, TEXAS HOUSE OF REPRESENTATIVES<br><br>-and-<br><br>TEXAS STATE CONFERENCE OF NAACP BRANCHES; HOWARD JEFFERSON, JUANITA WALLACE and REV. BILL LAWSON<br><br>Plaintiff-Intervenors<br><br>v.<br><br>STATE OF TEXAS; RICK PERRY, in his official capacity as Governor of the State of Texas; DAVID DEWHURST, in his official capacity as Lieutenant Governor of the State of Texas; JOE STRAUS, in his official capacity as Speaker of the Texas House of Representatives; HOPE ANDRADE, in her official capacity as Secretary of State of the State of Texas<br><br>Defendants | CIVIL ACTION NO.<br>11-CA-360-OLG-JES-XR<br>[Lead case] |

MEXICAN AMERICAN LEGISLATIVE          )
CAUCUS, TEXAS HOUSE OF                )
REPRESENTATIVES (MALC)                )
                                      )
                Plaintiffs            )
        -and-                         )
                                      )
THE HONORABLE HENRY CUELLAR,          )
Member of Congress, CD 28; THE TEXAS  )
DEMOCRATIC PARTY and BOYD             )
RICHIE, in his official capacity as Chair of )
the Texas Democratic Party; and LEAGUE )
OF UNITED LATIN AMERICAN              )
CITIZENS (LULAC) and its individually )
named members                         )
                                      )
            Plaintiff-Intervenors     )
                                      )
v.                                    )          CIVIL ACTION NO.
                                      )          SA-11-CA-361-OLG-JES-XR
STATE OF TEXAS; RICK PERRY,           )          [Consolidated case]
in his official capacity as Governor of the )
State of Texas; DAVID DEWHURST,       )
in his official capacity as Lieutenant )
Governor of the State of Texas; JOE   )
STRAUS, in his official capacity as Speaker )
of the Texas House of Representatives; )
                                      )
                Defendants            )
_____  )

TEXAS LATINO REDISTRICTING            )
TASK FORCE, JOEY CARDENAS,            )
ALEX JIMENEZ, EMELDA                  )
MENENDEZ, TOMACITA OLIVARES,          )
JOSE OLIVARES, ALEJANDRO ORTIZ,       )
AND REBECCA ORTIZ                     )
                                      )
                Plaintiffs            )          CIVIL ACTION NO.
                                      )          SA-11-CA-490-OLG-JES-XR
v.                                    )          [Consolidated case]
                                      )
RICK PERRY, in his official capacity  )
as Governor of the State of Texas     )
                                      )
                Defendants            )
_____  )

2

MARGARITA V. QUESADA; ROMEO )
MUNOZ; MARC VEASEY; JANE )
HAMILTON; LYMAN KING; and )
JOHN JENKINS )
                             )
        Plaintiffs )                  CIVIL ACTION NO.
                            )       SA-11-CA-592-OLG-JES-XR
v.                         )         [Consolidated case]
                            )
RICK PERRY, in his official capacity )
as Governor of the State of Texas; and )
HOPE ANDRADE, in her official )
capacity as Secretary of State for the )
State of Texas )
                            )
        Defendants )

---

JOHN T. MORRIS )
                            )
        Plaintiff )
v.                         )         CIVIL ACTION NO.
                            )       SA-11-CA-615-OLG-JES-XR
STATE OF TEXAS; RICK PERRY, in his )       [Consolidated case]
official capacity as Governor of the State )
of Texas; DAVID DEWHURST, in his )
official capacity as Lieutenant Governor of )
the State of Texas; JOE STRAUS, in his )
official capacity as Speaker of the Texas )
House of Representatives; and HOPE )
ANDRADE, in her official capacity as )
Secretary of State of the State of Texas )
                            )
        Defendants )

---

EDDIE RODRIGUEZ, MILTON GERARD )
WASHINGTON, BRUCE ELFANT, )
ALEX SERNA, SANDRA SERNA, )
BETTY F. LOPEZ, DAVID GONZALEZ, )
BEATRICE SALOMA, LIONOR SOROLA- )
POHLMAN; ELIZA ALVARADO; )
JUANITA VALDEZ-COX; JOSEY )
MARTINEZ; NINA JO BAKER; TRAVIS )
COUNTY and CITY OF AUSTIN )
                            )
        Plaintiffs )

3

v.                                            )
                                              )
RICK PERRY, in his official capacity          )        CIVIL ACTION NO.
as Governor of the State of Texas;            )        SA-11-CA-635-OLG-JES-XR
DAVID DEWHURST, in his                        )        [Consolidated case]
official capacity as Lieutenant Governor      )
of the State of Texas; JOE STRAUS,            )
in his official capacity as Speaker of        )
the Texas House of Representatives;           )
HOPE ANDRADE, in her official                 )
capacity as Secretary of State of the         )
State of Texas; STATE OF TEXAS;               )
BOYD RICHIE, in his official capacity         )
as Chair of the Texas Democratic Party;       )
and STEVE MUNISTERI, in his official          )
capacity as Chair of the Republican           )
Party of Texas                                )
                                              )
            Defendants                        )

# ORDER

Pending before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the alternative, Motion for Judgment on the Pleadings (Dkt. # 209). Plaintiffs have filed responses thereto (Dkt. # 225, 226, 227, 230, 231, 232, 234, 236, 237, 239 and 240). Defendants also filed a reply (Dkt. # 249), and MALC filed a sur reply (Dkt. # 258). After reviewing the record and the applicable law, and after hearing the parties' oral arguments, the Court finds that Defendants' motions should be granted in part and denied in part, and the remaining claims will proceed to trial.

I.

Statement of the case

This is a voting rights case arising out of recently enacted legislative redistricting plans. The decennial census was conducted last year, pursuant to Article I, § 2 of the U. S. Constitution. After the census figures were released, the State of Texas undertook redistricting efforts to apportion seats in the U. S. House of Representatives and the Texas House of Representatives. See U.S. CONST. Art. I, § 2; see also TEX. CONST. Art. III, § 26.

The 82nd Texas Legislature enacted House Bill 150 ("H.B. 150"), which established a new redistricting plan for the Texas House of Representatives. ("Plan H283"). House Bill 150 was signed into law on or about June 17, 2011. The legislature also enacted Senate Bill 4 ("S.B. 4"), which established a new congressional redistricting plan for the State of Texas. ("Plan C185"). Senate Bill 4, as amended, was signed into law on or about July 18, 2011. A lawsuit for judicial preclearance of both plans has been filed and is currently pending in the U.S. District Court for the District of Columbia. The plaintiffs herein challenge the legality of the new redistricting plans and seek to enjoin Defendants from implementing the plans.

II.

### The parties' claims and defenses

There are numerous parties to this consolidated action, and most of the pleadings have been amended since the inception of the lawsuit. The live pleadings, and the claims and defenses asserted therein, may be summarized as follows:

A.   The Quesada plaintiffs:[1]

These plaintiffs include Margarita Quesada, Romeo Munoz, Marc Veasey, Jane Hamilton, Lyman King, John Jenkins, Kathleen Maria Shaw, Debbie Allen, Jamaal R. Smith, and Sandra Puente. They describe themselves as Hispanic and African-American citizens and registered voters that reside in current congressional districts 6, 9, 18, 20, 24, 26, 29, 30 and 33.

The Quesada plaintiffs challenge the legality of Plan C185, the congressional redistricting plan. They allege that the plan clearly dilutes the voting strength of African-American and Hispanic voters. They claim that the districts in Plan C185 are "racial gerrymanders" and the plan intentionally discriminates against Hispanic and African-American persons, in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. They also assert that Plan C185 is a "blatant

---

[1]The Quesada plaintiffs' live pleading is their first amended complaint, Dkt. # 105.

partisan gerrymander," in violation of Article I, Sections 2 and 4 of the U.S. Constitution, and the First and Fourteenth Amendments to the U.S. Constitution. The Quesada plaintiffs allege that Plan C185 violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, because minority voters are denied an equal opportunity to effectively participate in the political process and will not have any meaningful influence in elections for Members of Congress in Texas. Finally, they assert that Plan C185 cannot be implemented because S.B. 4, as amended, has not been precleared pursuant to Section 5 of the Voting Rights Act. The Quesada plaintiffs request declaratory and injunctive relief, and seek recovery of their costs and attorney's fees.

The Quesada plaintiffs name Rick Perry, Governor of the State of Texas, and Hope Andrade, the Texas Secretary of State, as defendants. They have filed an answer, generally denying the allegations and specifically asserting the following defenses: standing; immunity under the Eleventh Amendment; and, the cause of action under Section 5 of the Voting Rights Act is not justiciable.[2]

B.    The MALC plaintiffs:[3]

The Mexican American Legislative Caucus ("MALC") is described as a non-profit organization established to serve members of the Texas House of Representatives that are elected from and represent constituencies in Latino majority districts. Many of the representatives elected to serve the districts are also Latino. Members of MALC are also registered voters in Texas, and participate in state and local elections.

MALC challenges the legality of Plan C185, the congressional redistricting plan, and Plan H283, the Texas House of Representatives redistricting plan. MALC claims that both plans far exceed permissible deviation limits and cannot be justified by legitimate state redistricting interests. MALC alleges that the Texas legislature employed racial gerrymandering techniques to dilute the voting strength

---

[2]The defendants' answer to the Quesada plaintiffs' first amended complaint is Dkt. # 195.

[3]The MALC plaintiffs' live pleading is their second amended complaint, Dkt. # 50.

of Hispanics and limit the number of districts in which Hispanics can elect candidates of their choice. MALC asserts a cause of action under 42 U.S.C. § 1983 for intentional discrimination and "discriminatory effect" in violation of the Fourteenth and Fifteenth Amendments to the U.S. Constitution.  MALC also brings an equal protection claim under 42 U.S.C. § 1983 for violations of the one person, one vote principle.  MALC asserts a cause of action under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, alleging that Defendants used racial gerrymandering to dilute Hispanic voting strength and avoid drawing minority opportunity districts when such districts were clearly justified under the circumstances.  Finally, MALC contends neither plan can be implemented because they have not been precleared pursuant to Section 5 of the Voting Rights Act.  MALC requests declaratory and injunctive relief, and seeks recovery of all costs and fees.

The named defendants in MALC's complaint are:  the State of Texas; Rick Perry, the Governor of the State of Texas; David Dewhurst, Lieutenant Governor for the State of Texas; and Joe Straus, Speaker of the Texas House of Representatives.  They have filed an answer, generally denying the allegations and  specifically asserting the following defenses: standing; immunity under the Eleventh Amendment; and ripeness.[4]

C.       The Latino Redistricting Task Force:[5]

The Latino Redistricting Task Force ("LRTF") describes itself as an unincorporated association of individuals and organizations committed to securing fair redistricting plans for Texas.  The organizational members include Hispanics Organized for Political Education (HOPE), the Mexican American Bar Association, the National Organization for Mexican American Rights, the Southwest Voter Registration Education Project, the William C. Velasquez Institute, and the Southwest Workers' Union. The individual members are described as Latino registered voters who have been adversely affected by

---

[4]Defendants' answer to MALC's second amended complaint is Dkt. # 110.

[5]The Latino Redistricting Task Force plaintiffs' live pleading is their second amended complaint, Dkt. # 68.

the dilution of Latino voting strength in the newly enacted redistricting plans.

The LRTF challenges the legality of Plan C185, the congressional redistricting plan, and Plan H283, the Texas House of Representatives redistricting plan. As a result of the dramatic increase in the Latino population, which is geographically compact and politically cohesive, the creation of Latino-majority districts appeared axiomatic. However, the 82nd Legislature allegedly packed and fractured Latino voters into districts that ensured a loss in voting strength. The LRTF claims that both plans discriminate against them, in violation of the Fourteenth and Fifteenth Amendments to the U.S. Constitution. The LRTF asserts that both plans have the effect of "canceling out or minimizing" their voting strength as minorities and result in a denial or abridgement of their right to vote, in violation of Section 2 of the Voting Rights Act, 42 U.S.C. §1973. The LRTF also asserts that the plans cannot be implemented until they have received preclearance under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. The LRTF requests declaratory and injunctive relief, and seeks recovery of their costs and fees.

The LRTF names Rick Perry, Governor of the State of Texas, and Hope Andrade, Secretary of State for the State of Texas, as defendants. They have filed an answer, generally denying the allegations and specifically asserting the following defenses: standing and Eleventh Amendment immunity.[6]

D.    The Perez plaintiffs:[7]

The Perez plaintiffs are individuals who reside and vote in various counties in the State of Texas and have been adversely affected by the newly enacted redistricting plans. The Perez plaintiffs challenge the legality of Plan C185, the congressional redistricting plan, and Plan H283, the Texas House of Representatives redistricting plan. They assert that the minority populations in many counties have been packed and/or fragmented for the purpose of diluting their voting strength. They claim that the plans are the result of racial and political gerrymandering and include population deviations well above

---

[6]Defendants' answer to the Latino Redistricting Task Force's second amended complaint is Dkt. # 132.

[7]The Perez plaintiffs' live pleading is their third amended complaint, Dkt. # 53.

constitutionally acceptable norms.  They also claim that the misapplication of the prison population resulted in even more dramatic population deviations.  The Perez plaintiffs claim that these actions by the State violate Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the U.S. Constitution.  They seek declaratory and injunctive relief, and recovery of their costs and fees.

The Perez plaintiffs name Rick Perry, Governor of the State of Texas; David Dewhurst, Lieutenant Governor of the State of Texas; Joe Straus, Speaker of the Texas House of Representatives; and, Hope Andrade, Secretary of State for the State of Texas, as defendants.  They filed an answer, generally denying most of the allegations, and specifically assert the following defenses: (1) the classification of prisoners for purposes of redistricting is a nonjusticiable political question, which falls outside the Court's jurisdiction; (2) political gerrymandering is a nonjusticiable political question; (3) the Perez plaintiffs lack standing to challenge the classification of prisoners for purposes of redistricting; (4) the challenge to the classification of prisoners fails to state a claim upon which relief may be granted; (5) the Perez plaintiffs fail to state a claim against Lieutenant Governor Dewhurst and Speaker Straus for which relief may be granted because they do not have the authority to alter the redistricting plan and/or prevent an election from going forward; and (6) Eleventh Amendment immunity.[8]

E.      The Rodriguez plaintiffs:[9]

The Rodriguez plaintiffs include twelve individuals who reside and vote in current congressional districts 10, 12, 15, 16, 18, 20, 21, 25.  All of the Rodriguez plaintiffs are minorities.  The plaintiffs also include Travis County, Texas and the City of Austin, Texas.

The Rodriguez plaintiffs challenge the legality of Plan C185, the congressional redistricting plan. They claim that there were several areas of Texas in which majority-minority districts could have been created, based on the 2010 census data.  Yet the Texas Legislature engaged in purposeful, race-based

---

[8]Defendants' answer to the Perez plaintiffs' third amended complaint is Dkt. # 131.

[9]The Rodriguez plaintiffs' live pleading is their first amended complaint, filed as Dkt. # 23 in Cause No. 11-CA-635 prior to consolidation.

discrimination to ensure that the voting power of minority voters was diminished. They also assert that the Texas Legislature deliberately fractured the tri-ethnic coalition enjoyed by voters in Travis County and the City of Austin, and the legislature's blatant racial gerrymandering will effectively prevent minority voters from having any meaningful impact on congressional elections for the next ten years.

The Rodriguez plaintiffs bring causes of action under Section 2 of the Voting Rights Act, as well as the Fourteenth and Fifteenth Amendments to the U.S. Constitution. They further assert that Plan C185 cannot be implemented until precleared, pursuant to Section 5 of the Voting Rights Act. They seek declaratory and injunctive relief, and recovery of their costs and fees.

The Rodriguez plaintiffs name the following persons and entities as defendants: Rick Perry, Governor of the State of Texas; David Dewhurst, Lieutenant Governor of the State of Texas; Joe Straus, Speaker of the Texas House of Representatives; Hope Andrade, Secretary of State for the State of Texas; Boyd Richie, Chair of the Texas Democratic Party; and, Steve Munisteri, Chair of the Republican Party of Texas. The defendants have filed an answer, generally denying most of the allegations and specifically asserting the following defenses: (1) the individual plaintiffs do not live in congressional district 27; thus, they lack standing to challenge the constitutionality of that district under Plan C185; (2) the Section 2 challenge to congressional districts that include Tarrant and Travis counties fails to state a claim upon which relief may be granted; (3) the Rodriguez plaintiffs cannot prove actual intent to discriminate based on race or ethnicity; (4) the Fifteenth Amendment claim must fail because the Rodriguez plaintiffs cannot prove that minorities are prevented from voting in congressional elections; (5) the Rodriguez plaintiffs lack standing to assert claims against Lieutenant Governor Dewhurst and Speaker Straus because their injuries are not traceable to them and neither the Lieutenant Governor nor the Speaker have the authority to take the corrective action being sought; and (6) the Section 5 claim is nonjusticiable, as Defendants do not intend to implement the Plan until preclearance is granted.[10]

---

[10]Defendants' answer to the Rodriguez plaintiffs' first amended complaint is Dkt. # 133.

F.     <u>Mr. John Morris, individually</u>:[11]

Mr. Morris sued individually, on behalf of himself only.  He describes himself as a resident and registered voter in the 2nd congressional district, which includes Harris County, Texas.

Mr. Morris challenges the legality of Plan C185, the congressional redistricting plan.  He claims that the congressional district in which he resides was drastically changed as the result of partisan gerrymandering, effectively depriving him of his right to vote for the candidate of his choice.  Plaintiff Morris asserts causes of action for violations of Article I, Section 2 of the U.S. Constitution and the First and Fourteenth Amendments to the U.S. Constitution.  He seeks declaratory and injunctive relief, and recovery of any costs incurred herein.

Plaintiff Morris names Rick Perry, Governor of the State of Texas; David Dewhurst, Lieutenant Governor of the State of Texas; Joe Straus, Speaker of the Texas House of Representatives; and, Hope Andrade, Secretary of State for the State of Texas, as defendants.  They have filed an answer, generally denying the allegations and specifically asserting the defenses of standing and Eleventh Amendment immunity.

G.     <u>Plaintiff-intervenor LULAC</u>:[12]

LULAC is described as the oldest and largest national Hispanic civil rights organization, with a history of promoting voting rights on behalf of Hispanics and other minorities.  Gabriel Rosales and others, who are individually named along with LULAC, are members of the organization.  They are also registered voters in the State of Texas.  They are collectively referred to as LULAC.

LULAC challenges the legality of Plan C185, the congressional redistricting plan, <u>and</u> Plan H283, the Texas House of Representatives redistricting plan.  LULAC asserts that Hispanic growth exploded during the last ten years, as reflected in the 2010 census results.  As a direct result of that growth, Texas

---

[11]Plaintiff Morris' live pleading is his amended complaint, filed as Dkt. # 7 in Cause No. 11-CA-615 prior to consolidation.

[12]LULAC's live pleading is its first amended and supplemental complaint, Dkt. # 78.

was apportioned four new congressional districts. However, the Texas Legislature used racial gerrymandering to ensure that Hispanics would not be able to elect the candidate of their choice in any of the new districts. Plan H283 actually reduces the number of minority opportunity districts. LULAC claims that the plans dilute the voting strength of Hispanic and other minority voters, in violation of Section 2 of the Voting Rights Act. LULAC also claims that the State failed to accommodate the "undercount" of the Hispanic population in the census, further resulting in diminished voting strength in the Hispanic community. LULAC contends the plans contain substantial population disparities, in violation of the Fourteenth Amendment's equal protection clause and the one person, one vote principle.

LULAC brings its claims under 42 U.S.C. § 1983 for violations of the Fourteenth and Fifteenth Amendments, based on allegations of intentional discrimination, discriminatory effect, and violations of the one person, one vote principle. LULAC also brings a cause of action under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, for dilution of minority voting strength. LULAC further contends that implementation of the plans prior to preclearance would violate Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. LULAC requests declaratory and injunctive relief, and seeks recovery of its costs and fees.

LULAC names as defendants: the State of Texas; Rick Perry, Governor of the State of Texas; David Dewhurst, Lieutenant Governor of the State of Texas; and, Joe Straus, Speaker of the Texas House of Representatives. They have filed an answer, generally denying the allegations and specifically asserting the following defenses: (1) Eleventh Amendment immunity; (2) the claim under Section 5 of the Voting Rights Act is not justiciable; and (3) LULAC "lacks standing" to pursue its claims against the Lieutenant Governor and Speaker of the House.[13]

---

[13]The defendants' answer to plaintiff-intervenor LULAC's first amended and supplemental complaint is Dkt. # 188.

H.      Plaintiff-intervenor NAACP:[14]

The NAACP plaintiff-intervenors include the Texas State Conference of NAACP Branches and individually named members and registered voters, including Howard Jefferson, Juanita Wallace, and Rev. Bill Lawson.  They are referred to collectively as the NAACP plaintiff-intervenors.

The NAACP plaintiff-intervenors challenge the legality of Plan C185, the congressional redistricting plan, and Plan H283, the Texas House of Representatives redistricting plan.  They contend that both plans dilute the voting strength of African-American voters.  The 82nd Texas Legislature was presented with plans that did not dilute minority voting strength, but rejected them.  Instead, the Legislature enacted redistricting plans that split the minority voting bloc and preventing them from effectively participating in the political process.  The NAACP plaintiff-intervenors allege that the newly-enacted plans were developed with the intent to disadvantage African-American and other minority voters.  They alleged that the plans exceed permissible population variances, and clearly violate the one person, one vote principle.  They also assert that the plans cannot be implemented until precleared, pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.

The NAACP plaintiff-intervenors assert a cause of action under 42 U.S.C. § 1983 for intentional discrimination and violations of the one person, one vote principle embodied within the Fourteenth Amendment to the U.S. Constitution.  They also assert a cause of action under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, based on the dilution of minority voting strength.  They also note that the plans cannot be implemented prior to preclearance, pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  The NAACP plaintiff-intervenors request declaratory and injunctive relief, and seek recovery of their costs and fees.

The NAACP plaintiff-intervenors name as defendants: the State of Texas; Rick Perry, Governor of the State of Texas; David Dewhurst, Lieutenant Governor of the State of Texas; Joe Straus, Speaker

---

[14]Plaintiff-intervenor NAACP's live pleading is its amended complaint, Dkt. # 69.

of the Texas House of Representatives; and, Hope Andrade, Secretary of State for the State of Texas. They have filed an answer, generally denying the allegations in the complaint and specifically asserting the following defenses:  lack of standing and failure to state a claim against the Lieutenant Governor and Speaker of the House.[15]

I.       Congresspersons Eddie Bernice Johnson, Sheila Jackson-Lee, Alexander Green, and Henry Cuellar, appearing as plaintiff-intervenors:[16]

        a.       Congresspersons Johnson, Jackson-Lee and Green:

These are Texas African-American voters and members of Congress who reside, vote in and represent the districts affected by the newly enacted congressional redistricting plans.  Congresspersons Johnson, Jackson-Lee, and Green challenge the legality of C185, the congressional redistricting plan. They allege that the plan dilutes the voting strength of African-American voters and they will not have an equal opportunity to elect candidates of their choice to Congress.  The Congresspersons contend the plan unnecessarily splits politically cohesive minority groups, and is designed to minimize or cancel out minority voting strength, both now and in the future. They claim that Plan C185 is the result, in whole or in part, of intentional discrimination.

Congresspersons Johnson, Jackson-Lee and Green assert a cause of action under Section 2 of the Voting Rights Act.  They also assert a cause of action under 42 U.S.C. § 1983, based on allegations of intentional discrimination and violations of the one person, one vote principle embodied within the Fourteenth Amendment to the U.S. Constitution.  They also state that Plan C185, like the other plans, cannot be implemented until precleared, pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  The Congresspersons seek declaratory and injunctive relief, and the recovery of fees and costs.

Congresspersons Johnson, Jackson-Lee and Green name the following as defendants: the State of Texas; Rick Perry, Governor of the State of Texas; David Dewhurst, Lieutenant Governor of the State

---

[15]Defendants' answer to the NAACP plaintiff-intervenors' amended complaint is Dkt. # 194.

[16]The Congresspersons' live pleadings are their original complaints, Dkt. # 71 and Dkt. # 222.

of Texas; Joe Straus, Speaker of the Texas House of Representatives; and Hope Andrade, Secretary of

State for the State of Texas. Defendants have filed an answer, generally denying most of the allegations

and specifically asserting that the Congresspersons "lack standing" to pursue claims against the

Lieutenant Governor and Speaker of the House.[17]

      b.      <u>Congressman Henry Cuellar</u>:

Congressman Cuellar is a Latino voter from Webb County, and serves as a member of Congress.

He challenges the legality of Plan C185, the congressional redistricting plan. He claims that the 2010

census data severely undercounts Latinos and using such data undervalues the vote of Texas Latinos.

He asserts that the population disparities far exceed the allowable deviation under the U.S. Constitution,

and violate the one person, one vote principle. Congressman Cuellar alleges that Latinos and African

Americans vote as a group and are politically cohesive, but their voting strength will be diluted under the

newly enacted redistricting plan. He claims that Plan C185 violates the rights of Latino voters under

Section 2 of the Voting Rights Act, as well as the Fourteenth and Fifteenth Amendments to the U.S.

Constitution. He seeks declaratory and injunctive relief, and the recovery of his fees and costs.

Congressman Cuellar names as defendants: the State of Texas; Rick Perry, Governor of the State

of Texas; David Dewhurst, Lieutenant Governor of the State of Texas; and, Joe Straus, Speaker of the

Texas House of Representatives. Defendants have not yet filed answer to Congressman Cuellar's

complaint.

J.      <u>Intervenor/Cross-claimants Texas Democratic Party and Mr. Boyd Richie</u>:[18]

The Texas Democratic Party (TDP) and its chairman, Boyd Richie, have intervened and have also

filed a cross claim herein. They challenge the legality of Plan C185, the congressional redistricting plan,

<u>and</u> Plan H283, the Texas House of Representatives redistricting plan. The TDP and Richie claim that

---

[17]The defendants' answer to the Congresspersons' original complaint is Dkt. # 193.

[18]The TDP and Boyd Richie's crossclaim is Dkt. # 55.

the plans are blatant partisan gerrymanders that thwart majority rule.  The plans were drawn in an invidious manner, and have no legitimate legislative objective.  They allege that the plans violate the First and Fourteenth Amendments, and Article I, Sections 2 and 4 of the U.S. Constitution.  They also note that the plans cannot be implemented until precleared under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.  They seek declaratory and injunctive relief, and the recovery of costs and fees.

The TDP and Mr. Richie name Rick Perry, Governor of the State of Texas, and Hope Andrade, Secretary of State for the State of Texas, as cross-defendants.  They have filed an answer to the cross claim, generally denying most of the allegations and specifically asserting the following defenses: (1) Eleventh Amendment immunity; (2) political gerrymandering is a nonjusticiable political question; (2) the Cross-claimants fail to state a claim for violations of the First Amendment; and (3) any claim under Section 5 is nonjusticiable.[19]

### III.

### Grounds asserted for dismissal or judgment on the pleadings

Defendants have moved for dismissal or, in the alternative, judgment on the pleadings on the following grounds:

1.    Political gerrymandering claims are nonjusticiable;

2.    Plaintiffs Morris, MALC, and the Texas Latino Redistricting Task Force lack standing;

3.    There is no viable claim for census undercount;

4.    Claims based on the use of census data on prisoners must be dismissed as a matter of law; and

5.    Plaintiffs fail to allege a case or controversy against the Lieutenant Governor and Speaker of the House.

---

[19]The cross-defendants' answer to the TDP and Richie's Crossclaim is Dkt. # 167.

The Court held a pretrial conference on September 1, 2011, and the parties were given an opportunity to present oral argument on the issues herein. After hearing arguments of counsel, the Court ruled, on the record, that the motion to dismiss all claims against Lieutenant Governor Dewhurst and Speaker Straus is GRANTED, and the motion to dismiss MALC's claims based on standing is DENIED. Thus, the Court will only address those issues that remain.

IV.

Standing

Defendants have moved for dismissal under Fed.R.Civ.P. 12(b)(1), claiming that plaintiffs Morris and the Latino Redistricting Task Force lack standing to assert their claims herein.

"In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 498-99 (1975). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Id. at 501; Ass'n of American Physicians & Surgeons, Inc. v. Texas Medical Bd., 627 F.3d 547, 550 (5th Cir. 2010). To establish standing at the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

1.   Plaintiff Morris:

The State argues that plaintiff John T. Morris lacks standing to assert his vote dilution claim. The State concedes that Morris is a citizen, that he resides and is a registered voter in the Second Congressional District, and that his complaint concerns the effect of the redistricting plan on the Second

Congressional District. (Dkt. # 209, p. 9). The State argues that Mr. Morris lacks standing because he is asserting the legal rights of third parties—voters who were reapportioned to new congressional districts in surrounding counties—rather than his own. (Dkt. # 209, p. 9).

The State is incorrect. Morris does not argue that other persons' votes have been diluted. Morris contends that *he* has suffered an injury because *his* vote for *his* preferred candidate in *his* district has been diluted as a result of the redistricting plan.[20] That is a personalized injury sufficient to confer standing.[21] The fact that his own vote has been allegedly diluted because some voters in his district have been moved to other districts is not an assertion of other voters's rights; it is only a factual assertion explaining how his own vote in his own district has been diluted. Mr. Morris has standing to assert his vote dilution claim, and the motion is DENIED on this issue.[22]

2.    Latino Redistricting Task Force:

The State argues that the Latino Redistricting Task Force plaintiffs ("LRTF") lack standing to pursue certain claims. Plaintiffs alleging associational standing must demonstrate that: (1) the association's members, or any one of them, would have standing to sue in their own right; (2) the interests that the association seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit.[23] Even when

---

[20]While Mr. Morris doesn't express his political affiliation, the Court can fairly infer from his complaint that he identifies with the political party that was adversely affected by the redistricting. See Vieth v. Pennsylvania, 188 F.Supp.2d 532, 540 (M.D. Pa. 2002) (a plaintiff that is a resident of the affected area and a member of an identifiable political group has standing to assert political gerrymandering).

[21] See United States v. Hays, 515 U.S. 737, 745 (1995) (a plaintiff that resides in the affected district and has allegedly suffered personal harm as a result of the legislature's action has standing to challenge such action).

[22]But see discussion and ruling in Section V, *infra*.

[23] See Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149 (2009) (holding that plaintiff bears the burden to prove standing); Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977) (stating requirements for associational standing).

an association is involved, "Article III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." Warth, 422 U.S. at 501. In a redistricting case, this means that the person must live in the district they challenge. Shaw v. Hunt, 517 U.S. 899, 904 (1996).

The State argues that the LRTF plaintiffs have failed to show that they live in some of the challenged districts, namely congressional districts other than 6, 12, 23, 27, and Texas House districts other than 32 and 78. (Dkt. # 209, pp. 13-14). The State asks for more factual specificity than is required at this stage of the litigation, however. It is true that, at the summary judgment stage, to establish associational standing, an organization must name specific members who would be, or have been, directly affected by the allegedly illegal activity and provide affidavits with specific facts supporting its allegations. Summers, 129 S. Ct. at 1151-52; Lujan, 504 U.S. at 561. But "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan, 504 U.S. at 561. The Task Force states that it represents "Latino registered voters of Texas who reside in areas where Latino voting strength has been diluted by newly-enacted plans H283 and C185, and Latino registered voters of Texas who reside in areas where Latino-majority districts should have been created but were not in plans H283 and C185." (Dkt. # 68, p. 4). By stating that it is asserting claims on behalf of Latino members who reside in districts where Latino voting strength has been diluted or Latino-majority districts should have been created but were not, the Task Force has properly alleged that it is representing members who suffered an injury-in-fact. That is sufficient at this stage of the litigation. Defendants' motion to dismiss LRTF's claims for lack of standing is DENIED.

V.

Political or partisan gerrymander claims

The Quesada plaintiffs and John T. Morris allege that the congressional redistricting plan is a partisan gerrymander in violation of Article I, Sections 2 and 4, and the First and Fourteenth

19

Amendments of the U.S. Constitution.[24]  The Texas Democratic Party ("TDP") and its chairman Boyd

Richie allege that the congressional redistricting plan <u>and</u> the redistricting plan for the Texas House of

Representatives are both unconstitutional political gerrymanders, in violation of the Equal Protection

Clause of the Fourteenth Amendment to the United States Constitution; Article I, Sections 2 and 4 of

the U.S. Constitution; and the First Amendment to the U.S. Constitution.[25]  The Perez plaintiffs

occasionally use the words "political gerrymander" in their complaint, but, notwithstanding the State's

allegations, they made clear in their response to the motion to dismiss that they are making those

statements only in the context of one person, one vote claims, and not as an independent political

gerrymandering claim.[26]

The State asserts that plaintiffs' partisan gerrymandering claims are nonjusticiable political

questions under <u>Vieth v. Jubelirer</u>, 541 U.S. 267 (2004).  The justiciability issue is reviewed under Rule

12(b)(1) because "[t]he concept of justiciablity, as embodied in the political question doctrine, expresses

the jurisdictional limitations imposed upon federal courts by the 'case or controversy' requirement of

Article III." <u>Spectrum Stores, Inc. v. Citgo Petroleum Corp.</u>, 632 F.3d 938, 948 (5th Cir. 2011)(quoting

<u>Schlesinger v. Reservists Comm. to Stop the War</u>, 418 U.S. 208 (1974)).

In <u>Vieth</u>, a plurality of the Court concluded that political gerrymandering claims are indeed

nonjusticiable political questions because no judicially discernible and manageable standard for

adjudicating such claims exists.  <u>Id.</u> at 305-06 (plurality opinion).  Justice Kennedy concurred in the

judgment.  He agreed that plaintiffs' political gerrymandering claim should be dismissed, but he would

not "foreclose all possibility of judicial relief if some limited and precise rationale were found to" decide

political gerrymandering claims in the future.  <u>Id.</u> at 306 (Kennedy, J., concurring in the judgment).

---

[24]Dkt. # 105; Dkt. # 7, filed in 11-CV-615 prior to consolidation.

[25]Dkt. # 55.

[26]Dkt. # 227, p. 5 ("The <u>Larios</u> claims which embody both racial and political gerrymander
issues are one person-one vote contentions.").

Justice Kennedy's opinion is controlling, because it is the "'position taken by those Members [of the Court] who concurred in the judgments on the narrowest grounds.'" Alperin v. Vatican Bank, 410 F.3d 532, 552 n.13 (9th Cir. 2005) (quoting Marks v. United States, 430 U.S. 188, 193 (1977)).  Because Justice Kennedy's opinion left the door open on future political gerrymandering claims, the Court finds that such a claim is justiciable and dismissal for lack of jurisdiction is not appropriate under Rule 12(b)(1).

However, the political gerrymandering claims are viable only if there is a reliable legal standard that can be applied in determining the issues herein.  As Justice Kennedy noted, there is no "agreed upon model of fair and effective representation," so determining whether political classifications are related to a legitimate legislative purpose is an "analysis difficult to pursue." Vieth, 541 U.S. at 307 (Kennedy, J., concurring).  Because "there are yet no agreed upon substantive principles of fairness in districting, [courts] have no basis on which to define clear, manageable, and politically neutral standards for measuring the particular burden a given partisan classification imposes on representational rights." Id. at 307-08.  Absent agreed-upon principles of fairness, "the results from one gerrymandering case to the next would likely be disparate and inconsistent." Id. at 308.  Accordingly, absent a "standard by which to measure the burden [plaintiffs] claim has been imposed on their representational rights," they cannot "establish that the alleged political classifications burden those same rights," and their claim must be dismissed. Vieth, 541 U.S. at 313 (Kennedy, J., concurring); accord LULAC v. Perry, 548 U.S. 399, 418 (2006) (opinion of Kennedy, J.) ("[A] successful claim attempting to identify unconstitutional acts of partisan gerrymandering must . . . show a burden, *as measured by a reliable standard*, on the complainants' representational rights.")(emphasis added).

The non-movants were given an opportunity, but they have not, as required by Vieth and LULAC, identified a reliable standard by which to measure the redistricting plan's alleged burden on their representational rights.  Mr. Morris does not propose any standard by which to measure such a burden. Initially, the TDP and Quesada plaintiffs' proposal was that we "treat[] partisan gerrymandering cases much like obscenity cases—courts will know one when they see it." (Dkt. # 231, pp. 1-2, 9).  During

oral argument at the pretrial conference, they proposed a "totality of the circumstances" standard. This does not meet the Supreme Court's expectation of a "clear, manageable, and politically neutral" standard. See Vieth, 541 U.S. at 307-08 (Kennedy, J., concurring). Because the non-movants have failed to enunciate a reliable standard, their political gerrymandering claims should be dismissed on the pleadings pursuant to Rule 12(c).[27]

The Quesada plaintiffs also argue in the alternative that a standard could be developed at trial. They argue that nothing in Justice Kennedy's opinion forecloses that possibility. But that ignores the fact that the Court dismissed the claim at issue in Vieth based on the insufficiency of the complaint, because it did not allege a manageable standard. Id. at 313 (Kennedy, J., concurring) (citing Fed. R. Civ. P. 12(b)(6)). We are bound by that approach, which accords with the black-letter principle that a complaint must state a valid claim for relief for litigation to move forward. Providing a "reliable standard" for measuring the burden on plaintiffs's representational rights is necessary to state a claim for relief for political gerrymandering, see LULAC, 548 U.S. at 418. These plaintiffs' failure to provide one requires dismissal of their claim.

This ruling does not affect the Perez plaintiffs' allegations supporting their one person, one vote claim. The Perez plaintiffs alleged both political and racial gerrymandering in support of their one person, one vote claim. The applicable standard will be the standard for analyzing a one person, one vote claim.

---

[27] See Vieth, 541 U.S. at 313 (Kennedy, J., concurring) (dismissing case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim). The State moved to dismiss the political gerrymandering claim for lack of subject-matter jurisdiction under rule 12(b)(1), rather than for failure to state a claim under rule 12(b)(6) or judgment on the pleadings under 12(c). But the Court may construe the motion, in part, as a motion under Rule 12(c).

## VI.

### Claims involving census undercount

Defendants have also moved for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), on the claims involving census undercount. A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008). Thus, the complaint must contain enough facts that, accepted as true, state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

MALC and LULAC claim that the State has violated Section 2 of the Voting Rights Act by relying on unadjusted 2010 Census data, which undercounts Hispanics and thus dilutes the Hispanic vote. The State asserts that neither MALC nor LULAC have standing to bring their claim because neither can establish traceability or redressability. Specifically, the State alleges that the claim must fail because the plaintiffs fail to demonstrate that (1) the census data is flawed; (2) how the data could be improved through modification or an alternative method; and (3) whether any such improvements would actually strengthen the Hispanic vote.

MALC asserts that the alleged undercount is not a standalone claim, but rather one of many factual allegations used to support their Section 2 vote dilution claim. To support this argument, they refer to pages 14 and 15 of their second amended complaint, which says that the undercount, together with other factors, "all work together to result in a violation of the right of Plaintiff as secured by Section 2." (Dkt. # 50, pp. 14-15).

The State's only response to this argument is that the Court should still dismiss MALC's Section 2 claim "to the extent it is based on an alleged census undercount." However, Rule 12(c) motions are vehicles for the dismissal of implausible claims, not the preclusion of certain facts that are alleged to support the claim. A party should not be foreclosed at this juncture from presenting certain facts at trial for a claim that is otherwise viable. Defendants' motion to dismiss the claims involving census undercount is DENIED.

23

VII.

Claims relating to the use of census data on prisoners

Defendants move under Rules 12(b)(1) and 12(c) to dismiss the Perez plaintiffs' challenge to the newly enacted redistricting plans to the extent that their challenge hinges on the State's alleged misapplication of the prison population.[28]

First, the State asserts that the issue is a nonjusticiable political question. As acknowledged in District of Columbia v. Dep't of Commerce, 789 F. Supp. 1179 (D.D.C. 1992), a significant difference of opinion exists as to whether certain applications of the census data, and challenges thereto, constitute a political question. We join in District of Columbia v. Dep't of Commerce and find that this case does not constitute a nonjusticiable political question such that the Court would be barred from hearing it.

On the other hand, Plaintiffs' arguments have no legal basis and dismissal is appropriate as a matter of law. The Texas Election Code states that prisoners are not residents, for voting purposes, of the county where they are incarcerated. TEX. ELEC. CODE ANN. § 1.015(e)(Vernon 2010). Nevertheless, the U.S. Census Bureau counts them as such, and the Texas Constitution requires use of the census count as the basis for redistricting. TEX. CONST. Art. III, § 26. Thus, the State of Texas complied with the dictates of the Texas Constitution. While the State could enact a constitutional amendment or statute that modifies the count of prisoners as residents of whatever county they lived in prior to incarceration, there is no federal requirement to do so.

Plaintiffs rely on Mahan v. Howell, 410 U.S. 315 (1973), for the proposition that the census count for prisoners must be adjusted, and the State's failure to make such adjustment resulted in greater population deviation and a violation of the one person, one vote principle. The Mahan case involved the counting of navy personnel attached to ships "home-ported" in a district as residents of that district,

---

[28]These allegations are not the sole basis for the Perez plaintiffs' challenge to the plans under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the U.S. Constitution. Thus, their cause of action will survive regardless of the Court's ruling on this issue.

even though very few actually resided in that district. When the district court invalidated the plan, on

other grounds, it drew a new plan and changed the method by which naval personnel were assigned to

a district. The Supreme Court affirmed that decision, stating:

> We conclude that under the unusual, if not unique, circumstances in this case the District
> Court did not err in declining to accord conclusive weight to the legislative reliance on
> census figures. That court justifiably found that with respect to the three single-member
> districts in question, the legislative plan resulted in both significant population disparities
> and the assignment of military personnel to vote in districts in which they admittedly did
> not reside. *Since discriminatory treatment of military personnel in legislative reapportionment is
> constitutionally impermissible*, we hold that the interim relief granted by the District Court
> as to the State Senate was within the bounds of the discretion confided to it.

Mahan, 410 U.S. at 331-32 (citation omitted)(emphasis added). The facts herein are clearly

distinguishable. We are dealing with prisoners in permanent facilities, not navy personnel on a ship. The

Supreme Court was concerned with the discriminatory treatment of military personnel, and there are no

allegations in this case regarding the discriminatory treatment of prisoners. Nor can the Supreme Court's

review of the court-drawn redistricting plan in Mahan be compared to the Court's review of the

legislative redistricting plans herein. As the Supreme Court noted in Mahan, the district courts are

allowed to use their discretion and apply equitable considerations in drawing remedial redistricting plans.

Id. at 332. In this case, the Texas legislature was required to use the census count as the basis for

redistricting.

The Supreme Court has not extended its holding in Mahan to prison counts, and the Court has

not located any case where any court has concluded that such prison counts violate the mandates of the

one person, one vote principle. As the Fifth Circuit stated in Chen v. City of Houston, 206 F.3d 502,

528 (5th Cir. 2000), "in the face of the lack of more definitive guidance from the Supreme Court, we

conclude that this eminently political question has been left to the political process." Defendants' motion

to dismiss the Perez plaintiffs' claims is GRANTED, but only to the extent their claims are based on the

State's alleged misapplication of the census data on prisoners.

VIII.

Conclusion

It is therefore ORDERED that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the alternative, Motion for Judgment on the Pleadings (Dkt. # 209) is GRANTED IN PART as follows:

1. The political gerrymandering claims asserted by the Quesada plaintiffs, John T. Morris, Boyd Richie and the Texas Democratic Party are DISMISSED for failure to state a reliable standard. This was the only cause of action asserted by Plaintiff John T. Morris and Cross-claimants Texas Democratic Party and Mr. Boyd Richie. Thus, their complaints are dismissed in their entirety.

2. The Perez plaintiffs' claim based on the use of census data on prisoners is DISMISSED as a matter of law.

3. All claims against the Lieutenant Governor and Speaker of the House have been DISMISSED.

The motion is DENIED in all other respects, and the remaining claims will proceed to trial. Because his claims have been dismissed, Mr. Morris is not required to appear at trial on the merits. The TDP and Boyd Richie's cross claims have also been dismissed, but Court does note that the Rodriguez plaintiffs named Boyd Richie as a defendant. They should re-visit their pleadings and determine whether there is any reason to keep Mr. Richie in the lawsuit as a named defendant. If not, all claims against Mr. Richie should be dismissed prior to commencement of trial.

SIGNED this 2nd day of September, 2011.

_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE

*And on behalf of:*

| | | |
|---|---|---|
| Jerry E. Smith | | Xavier Rodriguez |
| United States Circuit Judge | *-and-* | United States District Judge |
| U.S. Court of Appeals, Fifth Circuit | | Western District of Texas |

26