STATE OF NEW YORK
SUPREME COURT                                                                          COUNTY OF ALBANY

---

SENATOR ELIZABETH O'C. LITTLE,
SENATOR PATRICK GALLIVAN;
SENATOR PATRICIA RITCHIE;
SENATOR JAMES SEWARD; SENATOR
GEORGE MAZIARZ; SENATOR
CATHARINE YOUNG; SENATOR JOSEPH
GRIFFO; SENATOR STEPHEN M. SALAND;
SENATOR THOMAS O'MARA; JAMES
PATTERSON; JOHN MILLS; WILLIAM
NELSON; ROBERT FERRIS; WAYNE
SPEENBURGH; DAVID CALLARD; WAYNE
MCMASTER; BRIAN SCALA; and
PETER TORTORICI,

                                              Plaintiffs,

          -against-                                                     **DECISION and ORDER**
                                                                        INDEX NO. 2310-2011
NEW YORK STATE TASK FORCE ON
DEMOGRAPHIC RESEARCH AND
REAPPORTIONMENT and NEW YORK
STATE DEPARTMENT OF CORRECTIONAL
SERVICES,
                                              Defendants,

          -and-

MICHAEL BAILEY; ROBERT BALLAN; JUDITH
BRINK; TEDRA COBB; FREDERICK A.
EDMOND III; MELVIN FAULKNER;
DANIEL JENKINS; ROBERT KESSLER;
STEVEN MANGUAL; EDWARD MULRAINE;
CHRISTINE PARKER; PAMELA PAYNE;
DIVINE PRYOR; TABITHA SIELOFF; and
GRETCHEN STEVENS,

                                              Intervenors-Defendants.

---

(Eugene P. Devine, J.S.C., presiding)

Exhibit 22

APPEARANCES:        David L. Lewis, Esq.
Lewis & Fiore
225 Broadway, Suite 3300
New York, New York 1007
Attorney for Plaintiffs

Steven G. Leventhal, Esq.
Leventhal, Sliney & Mullaney, LLP
15 Remsen Avenue
Roslyn, New York 11576
Co-Counsel for Citizen Plaintiffs

Eric T. Schneiderman
Attorney General of the State of New York
By Stephen M. Kerwin, Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendant New York State Department of Corrections
and Community Supervision

Wendy Weiser, Esq.
Brennan Center for Justice at New York University School of Law
161 Avenue of the Americas, 12th Floor
New York, New York 10013
Attorney for Intervenors-Defendants

Peter Wagner, Esq.
Aleks Kajstura, Esq.
Prison Policy Initiative
P.O. Box 127
Northampton, MA 01061
Attorneys for Intervenors-Defendants

Joan P. Gibbs, Esq.
Esmeralda Simmons, Esq.
Center for Law and Social Justice at Medgar Evers College, CUNY
1150 Carroll Street
Brooklyn, New York 11225
Attorneys for Intervenors-Defendants

Brenda Wright, Esq.
Demos: A Network for Ideas and Actions
358 Chestnut Hill Avenue, Suite 303

Brighton, MA   02135
Attorneys for Intervenors-Defendants

Juan Carteagna, Esq.
Jose Perez, Esq.
Jackson Chin, Esq.
LatinoJustice PRLDEF
99 Hudson Street, 14th Floor
New York, NY  10013
Attorneys for Intervenors-Defendants

John Payton, Esq.
Debo P. Adegbile, Esq.
Ryan P. Haygood, Esq.
Dale Ho, Esq.
Natasha M. Korgaonkar, Esq.
NAACP Legal Defense and Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, NY 10013
Attorneys for Intervenors-Defendants

Arthur Eisenberg, Esq.
Alexis Karteron, Esq.
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY   10004
Attorneys for Intervenors-Defendants

Sidney S. Rosdeitcher, Esq.
1285 Avenue of the Americas
New York, NY   10019
Attorneys for Intervenors-Defendants

**DEVINE, J.:**

In this declaratory judgment action, plaintiffs now seek summary judgment on their first

cause of action which seeks a judicial declaration that Part XX of Chapter 57 of the Laws of

2010, which requires that inmates be counted for reapportionment purposes in their last known

residence prior to their imprisonment rather than in the location of their assigned correctional

facility, violates the New York State Constitution.[1]   Defendant New York State Department of Corrections and Community Supervision (DOCCS) opposes the motion for partial summary judgment and has cross-moved to dismiss the complaint or, alternatively, for summary judgment in its favor.   In addition, the intervenors-defendants have cross-moved for summary judgment dismissing the complaint and have opposed plaintiffs' motion.

The Court must first address certain procedural matters, namely two applications to withdraw as counsel and a cross-motion from State Senator Martin Malave Dilan for leave to file an amicus curiae brief.   The two applications to withdraw as counsel are granted as the intervenors-defendants are more than adequately represented and no party is prejudiced as a result.   As to Senator Dilan's motion for leave to present an amicus curiae memorandum of law, in its discretion, the Court finds that, inasmuch as the proposed memorandum and supporting documents do not present any new arguments or perspectives that differ from those provided in submissions of DOCCS and the numerous intervenors-defendants, leave is denied.[2]

Furthermore, the Senator is a member of defendant New York State Legislative Task Force on Demographic Research and Reapportionment (LATFOR), which previously informed the Court that it would not render a separate submission in this action and was satisfied that the

---

[1] In the instant motion, plaintiffs' also sought summary judgment on their second cause of action seeking a declaratory judgment that passage of Part XX in a budget appropriations bill encroached upon the Legislature's power pursuant to Article III, § 1 of the New York State Constitution.   However, during oral argument on the motions, the parties stipulated that the second cause of action would be dismissed, thereby eliminating such cause of action from this Court's consideration.

[2] see Matter of Colmes v Fischer, 151 Misc. 222 [1934]; compare Matter of Empire State Assn. of Assisted Living, Inc. v Daines, 26 Misc.3d 340, 343 [Sup. Ct. Albany County, 2009]; Kruger v Bloomberg, 1 Misc.3d 192, 196 [Sup. Ct. New York County, 2003].

Office of the Attorney General, as counsel for DOCCS, would adequately address plaintiffs' contentions. As a member of a party to this action that has decided the manner in which it would appear in this case, the Court finds that it is unnecessary to grant Senator Dilan leave to participate separately from LATFOR and DOCCS merely because his opinion regarding the Attorney General's representation differs from that of the co-chairs of LATFOR .[3]

The underlying facts are, briefly, that Part XX amended the Correction Law, Legislative Law and Municipal Home Rule Law to require that prison inmates be identified and counted, for purposes of creating lines for the state's Assembly and Senate districts, in the census block containing the inmate's address prior to his or her incarceration. Specifically, Part XX requires DOCCS to report to LATFOR inmates' residential addresses prior to incarceration, if available, instead of the locations of their respective correctional facilities for redistricting purposes and, in the event the inmates' prior residential addresses are unknown, were outside the state, or the inmates were confined in federal institutions, LATFOR "shall consider those persons to have been counted at an address unknown and persons at such unknown address shall not be included in such data set" to be used to draw new legislative districts.

In support of their claim of entitlement to a judgment declaring that Part XX violates Article III, § 4 of the state Constitution because the method of counting inmates in their prior residences rather than their place of incarceration deviates from that recommended by the U.S. Census Bureau, plaintiffs refer to a report issued by the Census Bureau in 2006.[4] In that report,

---

[3] see Central Hanover Bank & Trust Co. v Saranac River Power Corp., 243 AD 843 [3d Dept. 1935].

[4] Article 3, § 4 states that the federal decennial census "shall be controlling as to the numbers of inhabitants in the state or any part thereof for the purposes of the apportionment of

-5-

the Census Bureau found that, at that time, it would be highly difficult to determine precise numbers of persons in each state "for apportionment purposes" unless prisoners were counted in their place of incarceration.[5] Despite the inherent difficulty in ascertaining consistent prisoner data, the Census Bureau recognized that Congress had required that prisoners be counted at their "permanent home of record," a term which was not clearly defined. The 2006 Census Bureau report concluded that counting inmates in the manner recommended by Congress would likely increase census-related costs and would burden correctional facilities that would be required to collect such data. The Court finds, however, that this report merely highlighted the difficulties attendant in attempting to collect prisoner residential data and did not, as plaintiffs infer, preclude the current statutory enactment which requires that inmates be counted at their last known residence rather than at their correctional facility. Nonetheless, at present, the Census Bureau appears to have changed its approach to counting prison inmates, as Bureau Director Robert M. Groves has reported that states may now create their own methodology for counting inmates for apportionment purposes. In March 2010, Groves stated that the Census Bureau counts individuals at their "usual residence" and that, for inmates in particular, states were free to decide the manner in which prisoners were counted, namely, at the prisons, at their pre-incarceration addresses or altogether removed from "redistricting formulas" where residential information was unavailable.[6] And, as intervenors-defendants point out, the Census Bureau purposely released its

members of assembly and readjustment or alteration of senate and assembly districts next occurring, in so far as such census and the tabulation thereof purport to give the information necessary therefor."

[5] Affirmation of David L. Lewis, at exhibit D.

[6] Intervenors-Defendants' Exhibit 1.

"Group Quarters" data early so that states, including New York, could enact redistricting plans that opted to count inmates at their pre-incarceration locations. Accordingly, plaintiffs have not demonstrated that Part XX has rendered the data provided by the Census Bureau to be anything less than 'controlling' in the redistricting process.

Further, plaintiffs' assertion that to consider inmates whose addresses cannot be determined or are from outside the state contravenes that part of Article III that requires that all "inhabitants" be counted for apportionment purposes is unavailing. Specifically, Article III requires that Senate and Assembly districts be drawn "according to the number of their respective inhabitants, excluding aliens," and the term "inhabitants" is defined as "the whole number of persons."[7] Though inmates may be physically found in the locations of their respective correctional facilities at the time the census is conducted, there is nothing in the record to indicate that such inmates have any actual permanency in these locations or have an intent to remain. In fact, it is undisputed that inmates are transferred among the state's correctional facilities at the discretion of DOCCS and plaintiffs have not proffered evidence that inmates have substantial ties to the communities in which they are involuntarily and temporarily located. Acknowledging that "legislative enactments carry an exceedingly strong presumption of constitutionality, and while this presumption is rebuttable, one undertaking that task carries a heavy burden of demonstrating unconstitutionality beyond a reasonable doubt," the Court finds and determines that, as to their first cause of action, plaintiffs have failed to demonstrate that, as

---

[7] see Art. III, § 5, § 5-a.

a matter of law, Part XX violates the state Constitution.[8] Therefore, plaintiffs' first cause of action must be dismissed.

Turning to defendants' and intervenors-defendants' respective motions for summary judgment dismissing the remaining causes of action, the Court will first consider plaintiffs' claim that Part XX violates the one-person, one-vote principle. Specifically, plaintiffs allege in their complaint that the statute "exacerbates the weight of vote differential between upstate and downstate counties that already exists because even with the total population being counted, there remains the disparate presence in downstate counties of ineligible voters and traditionally lower voter turnout rates," without further explaining how the purported ineligibility of individuals who are counted "downstate" has any impact on LATFOR's mandate to create legislative districts which are "substantially equal in population," nor do plaintiffs provide any evidence substantiating such claims.[9] In the memorandum of support concerning the subject legislation, the bill's sponsor explains that, as inmates do not use local "schools, hospitals, or other public facilities," unlike other individuals who are considered part of "group quarters," such as college students and military personnel, to continue counting them as inhabitants of the state's prison communities tends to dilute minority voting strength in violation of the federal Voting Rights Act of 1965 and the one-person, one-vote rule. The sponsor goes on to explain that Part XX sought to rectify the "electoral inequities" created by enumerating prisoners as part of districts in which they were involuntarily and temporarily placed. As these policy

---

[8] Matter of Frontier Ins. Co. v Town Bd. of Town of Thompson, 285 AD2d 953, 955 [3d Dept. 2001], quoting Elmwood-Utica Houses v Buffalo Sewer Auth., 65 NY2d 489 [1985].

[9] Longway v Jefferson County Bd. of Supervisors, 83 NY2d 17, 19 [1993]; see Reynolds v Sims, 377 US 533, 568 [1964].

determinations provided the requisite rational bases for enacting Part XX, the applications for dismissal of the equal protection claims must be granted.[10]

Furthermore, the Court agrees with defendants' assertion that plaintiffs' fourth cause of action must be dismissed for lack of standing. Under that claim, plaintiffs contend that Part XX denied equal protection rights to "all non-prisoners counted in group quarters," however, as no plaintiff confesses to being part of any "group quarter," plaintiffs cannot meet the threshold requirement of standing to assert this claim.[11] Plaintiffs' fifth and sixth causes of action, which repeat claims of equal protection violations, assert that Part XX irrationally counts inmates at their pre-incarceration addresses "even though they may have no ability or intention to return to such place thereby eliminating it as ever being a residence" and that counting them at their prior addresses impinges on the equal protection rights of other "persons," without further elaboration. Such claims are highly speculative and conclusory and fail to convince the Court that the underling legislative enactment is anything other than rationally based and constitutionally sound. Finally, plaintiff's seventh cause of action, which purports to raise of a claim of partisan gerrymandering, alleges that Part XX is the product of a power play by Democratic lawmakers to usurp the strength of the "Republican Party, its voters and elected representatives." Even in the event such claims were justiciable,[12] the Court finds and determines, nonetheless, that there is nothing in the record which demonstrates that the subject enactment constitutes a breach of the

---

[10] see e.g. Dalton v Pataki, 5 NY3d 243, 265-266 [2005].

[11] see Matter of New York Assn. of Convenience Stores v Urbach, 92 NY2d 204, 212 [1998].

[12] The United States Court of Appeals, in Veith v Jubelirer, 541 US 267 [2004], held that claims of political gerrymandering are non-justiciable.

legislature's obligation to substantially comply with the federal and state constitutions.[13]

Accordingly, it is now

**ORDERED** that the motions for leave to withdraw as counsel by Andrew Kalloch, Esq. and Allegra Chapman, Esq. are both granted; it is further

**ORDERED** that the motion for leave to file an amicus curiae memorandum of law by Senator Martin Malave Dilan is denied; it is further

**ORDERED** that plaintiffs' motion for partial summary judgment on the first cause of action is denied; it is further

**ORDERED** that plaintiffs' second cause of action is dismissed, on consent of all parties; it is further

**ORDERED** that defendants' and intervenors-defendants' motions for summary judgment dismissing plaintiffs' remaining causes of action are granted in their entirety and the complaint is dismissed.

Those assertions not specifically discussed herein have been considered and found to be unavailing.

This Memorandum shall constitute both the Decision and Order of the Court. This original **DECISION and ORDER** is being sent to the Office of the Attorney General. The signing of this **DECISION and ORDER** shall not constitute entry or filing under CPLR 2220. Legal counsel for the defendants is not relieved from the applicable provisions of that section with respect to filing, entry and notice of entry.

---

[13] see Matter of Wolpoff v Cuomo, 80 NY2d 70, 78 [1992], citing to Matter of Schneider v Rockefeller, 31 NY2d 420, 427 [1972].

-10-

**SO ORDERED**
**ENTER**

Date: _December 1_ , 2011
Albany, New York

EUGENE P. DEVINE, J.S.C.

PAPERS CONSIDERED:

1. Notice of Motion to Withdraw, Affirmation of Andrew L. Kalloch, Esq., dated August 30, 2011.
2, Notice of Motion for Request to Withdraw, Affirmation of Allegra Chapman, Esq., dated August 31, 2011.
3. Notice of Cross-Motion for Leave to File Amicus Curiae Brief, Affirmation of Leonard Kohen, Esq., Affidavit of Senator Martin Malave Dilan, with exhibits, dated August 17, 2011.
4. Notice of Motion for Summary Judgment, Affirmation in Support by David L. Lewis, Esq., with exhibits, and Memorandum of Law in Support of Motion, dated August 5, 2011.
5. Notice of Cross-Motion for Summary Judgment, Affirmation of Stephen M. Kerwin, Assistant Attorney General, with exhibits, and Memorandum of Law in Support of Cross-Motion and in Opposition of Motion for Summary Judgment, dated August 18, 2011.
6. Notice of Intervenors-Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, Affirmation of Peter Wagner, Esq., with exhibits, and Memorandum of Law in Support of Motion and in Opposition of Plaintiffs' Motion, dated August 18, 2011.
7. Plaintiffs' Reply Affirmation in Support of Motion for Summary Judgment and in Opposition to Defendants' Motions for Summary Judgment, with exhibits, and Reply Memorandum of Law, dated September 2, 2011.
8. Defendants' Reply Memorandum of Law, dated September 14, 2011.
9. Reply in Support of Intervenors-Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, dated September 15, 2011.